## NELSON MORRIS & CO.

### *v.*

## NORA M. MALONE, Admx.

*Opinion filed December 16, 1902.*

1. NEGLIGENCE—*one acting as proprietor, though only an agent, is liable as principal.* One operating a factory as owner and proprietor, so far as the public and the workmen employed are aware, is liable as principal for his negligence, notwithstanding he may have been acting as the agent for an undisclosed principal.

2. TRIAL—*when peremptory instruction for defendant is properly refused.* An instruction to find for the defendant in a personal injury case is properly refused where the evidence tends to show that the defendant did not use reasonable care to provide a safe place for plaintiff's intestate to work, and failed to warn him of the danger to which he was exposed by reason of such neglect of duty.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

F. J. CANTY, and J. A. BLOOMINGSTON, for appellant.

JOHN P. AHRENS, and F. W. BECKER, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

Judgment against the appellant in the sum of $2000, entered in the superior court of Cook county in an action under the statute by the appellee administratrix for the benefit of the widow and next of kin of Peter Malone, deceased, was affirmed by the Appellate Court for the First District. The recovery was upon the ground that the said Peter Malone, while in the employ of the appellant company, through the negligence of the company, received personal injuries which caused his death. This appeal asks reversal of the judgment of affirmance upon two grounds: First, that the superior court erred in refusing to admit proper and competent evidence offered in behalf of appellant; second, that the superior court erred in denying the motion, entered by appellant at the close of all the evidence, to instruct the jury to return a verdict in appellant's favor.

The evidence which was tendered by appellant and excluded was designed, as counsel for appellant insist, to show that on the day of the accident the appellant company; a co-partnership, "was acting as an agent of the Fairbank Canning Company, and that it was organized as a co-partnership simply for that purpose and for the purpose of selling goods only, and not manufacturing or producing, and for the further reason of showing that the name 'Nelson Morris & Co.' was used simply because it was better known to the trade and for advertising purposes on that account," and that actually the said deceased, Peter Malone, was in the employ of the said appellant company as agent for the Fairbank Canning Company.

The evidence clearly showed that the deceased was employed by Nelson Morris & Co., and that it was not disclosed to him that said Nelson Morris & Co. was acting as agent for any one, if it was, in fact, so acting. The testimony of the foreman under whom deceased worked, and the man who employed the deceased, was that he,

as foreman for Nelson Morris & Co., employed the deceased, and that deceased was in the employ of Nelson Morris & Co. Nelson Morris & Co. was operating the factory in which the accident occurred, as owner and proprietor thereof, so far as the public and the workmen employed therein knew. Upon this point there was no controverting proof. The contention Nelson Morris & Co. was in fact acting as agent first arose from the offer of the excluded testimony. We think that the agency, if any existed, not having been disclosed, Nelson Morris & Co. became liable for negligence, either by way of misfeasance or non-feasance, in the same manner and to the same extent as if it were a principal in interest. (*Malone* v. *Morton*, 84 Mo. 436.) The evidence was therefore properly excluded.

The court did not err in refusing to direct a peremptory verdict in favor of the appellant company. The deceased, while in the employ of the appellant company, was ordered to go into a vat and there receive, and place in even, level rows, hams of about fifty pounds' weight, which were to be conveyed to the vat from the floor above by means of a "chute." The vat was fifteen feet long from east to west, five feet four inches wide and four feet deep. The chute was of the dimensions of two feet by four feet, and passed from the floor above to the bottom of the vat, dividing the vat into two equal compartments, save that there was a space of about sixteen inches between one side of the vat and the chute. The chute was double,—that is, it delivered hams to each compartment of the vat. The compartments of the vat were six and one-half feet by five feet four inches, and four feet in depth. The deceased was in the easternmost compartment. About ten inches above that part of the vat in which he was working was a shaft, and an iron rod called a "belt-shifter." The shaft, when in motion, made five hundred revolutions per minute. The purpose of the belt shifter was to shift the belt and put the machinery in

motion or throw it out of gear. The shaft passed over the vat at a point about two feet west of the east end, and the belt-shifter was some eighteen inches still further to the west. The shaft and belt-shifter were four feet and ten inches above the bottom of the vat where the deceased was working. If standing upright on the bare floor of the vat, his head and shoulders would have been above the shaft and belt-shifter. The shaft was not boxed or otherwise covered so as to protect the workmen from coming in contact with it. After the vat was about half full of meat, on which the deceased was standing, the shaft, by some means not disclosed, was put in motion, caught the clothing of the deceased and whirled him about the shaft and instantly killed him. There were seven other vats in the same room, and the deceased had worked in the other vats, but never before in the one in which he was killed. The shaft did not pass above any of the other vats. The danger which attended the work in this vat was not explained to the deceased, and the shaft was not in motion when he entered the vat. It appeared that the machinery might be put in motion by a pressure of fifteen pounds upon the belt-shifter over the vat. The belt-shifter was not boxed or in anywise protected from contact with the workmen. The evidence tended to show the deceased was not advised and did not know that pressure upon the belt-shifter might put the shaft in motion.

The testimony tended to show the appellant company neglected its duty to use reasonable care to provide a safe place in which the deceased might work, and negligently failed to advise him of the dangers to which he was exposed by such omission of duty. The court therefore properly declined to declare, as matter of law, that the appellant company was free from the negligence charged in the declaration.

The judgment of the Appellate Court must be and is affirmed.                    *Judgment affirmed.*