Vera Cornwell, Appellee, v. Leiter Building Stores, Inc., Appellant.

Gen. No. 34,618.

Heard in the first division of this court for the first district at the October term, 1930. Opinion filed December 22, 1930.

JOSEPH H. HINSHAW, for appellant.

CHARLES C. SPENCER, for appellee.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff brought an action on the case to recover damages for personal injuries consisting of burns caused by a hair curling machine while she was having a permanent wave in a hairdressing parlor which the declaration alleged was owned, controlled and operated by defendant. Upon trial she had a verdict for $1,500 and from the judgment thereon defendant appeals.

Defendant pleaded the general issue and also that it did not own, control and operate the hairdressing establishment, and that it did not invite plaintiff into said establishment and was not employed by her to dress her hair.

Defendant asserts that the beauty parlor where plaintiff was injured was not controlled and operated by it but by the Schreiber Beauty Parlors, Inc. Defendant occupies a large building, a half block on State Street and running from Van Buren to Congress Streets in Chicago. It grants licenses to a considerable number of merchants to operate small shops or departments in the store. One of these licensees was the Schreiber Beauty Parlors, Inc., carrying on the business of hairdressing and the like. The license is written and provides that the licensor (defendant here) would furnish advertisements for which the licensee was to pay a certain sum. Such advertisement was to be handled by an advertising department maintained by the licensor and all advertisements were subject to the approval of the licensor. The licensor was to furnish janitor and telephone service. The licensor was entitled to receive a sum equal to 12½ per cent of the gross income of the licensee. The licensor reserved the right to direct the general policy

of the business carried on by the licensee, including the character of the merchandise, sales policy, advertising and sales, and the licensee agreed to conform to all policies from time to time prescribed by the licensor. The licensee agreed that the licensor should not be liable for any damages sustained by any person due to the negligence of the licensee. The licensee also agreed to observe such rules and regulations as the licensor may prescribe for the carrying on of the business.

Plaintiff testified that she had never heard of the Schreiber Beauty Parlors until a few days before the trial; that she saw advertisements in the Chicago Daily News advertising various items of merchandise which could be purchased at the store of defendant; that in this advertisement was a line advertising hair cutting and also these words:

"Leiter's policy of giving you just a little more for your money than you expected . . . of serving you just a little better than you anticipated, has earned the valued patronage of countless friends. Think of what this means and how you benefit by making Leiter's your established shopping place.

H. Flateau, Pres."

Induced by these advertisements, plaintiff visited defendant's store the first time in May, 1928. The name over the entrance doors to the store is "Leiter Building Stores." She saw in the store the advertisement framed which had appeared in the Daily News; also an advertisement that a permanent wave could be had for the special price of $7.50. At this time she received her first permanent wave at this place and subsequently went back to the same beauty parlor and had other work done.

February 18, 1929, desiring to have another permanent wave, plaintiff looked in the telephone directory under the name of Leiter Building Stores and tele-

phoned to the number given and made an appointment for that afternoon. While receiving the permanent wave, which involves the application of heat, she was burned on the head. That the operation was negligently performed, injuring plaintiff, is not in dispute.

The court properly instructed the jury that, if defendant by its actions and conduct held itself out and represented to the public and to the plaintiff that it was the proprietor of and operated the beauty parlor in question and that plaintiff believed that defendant was, in fact, conducting said beauty parlor and had no notice or knowledge that it was being conducted by any other person than defendant, then defendant would be responsible to plaintiff for the conduct of the persons who gave the permanent wave to her at the time she was injured. While defendant in its brief says that the giving of this instruction was error, no cases are cited to support this assertion. A similar instruction has been approved in *Fields, Inc. v. Evans* (Ohio App.), 172 N. E. 702, opinion handed down in November, 1929. The facts there were almost identical with the facts in the instant case. There, the plaintiff was burned while receiving a permanent wave in a beauty parlor which she alleged was operated by the defendant, Fields, Inc. There were advertisements such as in the case before us, but Fields, Inc., attempted to show that one Edgar Higgins was the owner and operator of the shop. The opinion holds that:

"Where a corporation holds itself out as the owner or proprietor of such a beauty shop, located within its own store building, and apparently a part of its store, and a person comes to such store, goes in, and therefrom enters the beauty shop for the purpose of obtaining service, without knowledge that a third person is the owner and proprietor and has control of the beauty shop, but relying and having a right to rely wholly

upon the holding out of such person or corporation, such corporation so holding itself out is liable for the actionable negligence of the operator in the beauty shop in giving treatments.''

Another case involving a person having her head burned while having her hair dressed is *Augusta Friedman's Shop, Inc. v. Yeates,* 216 Ala. 434. There it was held that defendant having held itself out to the public as the owner or proprietor of the beauty shop could not escape liability by asserting that the particular shop was owned and operated by another, the opinion saying that the jury could well infer from the evidence that plaintiff believed the beauty shop was operated by defendant and relied upon this fact in having her hair dressed. In *Hannon v. Siegel-Cooper Co.,* 167 N. Y. 244, where the plaintiff was injured by a negligent operation on her teeth and defendant asserted that the dental business was conducted by a Mr. Hayes individually, it was held that, where one contracts with the ostensible owner, he has a right to rely upon the presumption that the defendant would employ only skilful workmen to perform the services. The same principle was approved in *Morris & Co. v. Malone,* 200 Ill. 132, where it was sought to introduce evidence tending to show that Morris & Company was acting as the agent of the Fairbank Canning Company at the time of the accident. Such evidence was excluded on the ground that it had not been disclosed to the injured person that Morris & Company was acting as agent for any one and that so far as known by the public and the workmen employed the work was performed by Morris & Company, and that it was liable to the same extent as if it were a principal.

Defendant claims errors in the rulings of the court upon the admission of evidence and in permitting leading questions. The particulars presented are not of controlling importance. While leading questions

were sometimes permitted and some of the rulings as to the admissibility of evidence might be questioned, no reversible error was committed in this respect.

It is especially argued that it was reversible error to admit Rule 13 among the rules referred to in the license without admitting the rest of the rules and regulations. A witness for the defendant had testified that defendant had nothing to do with the hiring, discharging or directing of employees of the Schreiber Beauty Parlors, but there were general rules of the store to which the employees must conform and that it was not true that there were to be no employees of the Schreiber Beauty Parlors except those employed in the employment office maintained by the defendant. On cross-examination the witness was shown Rule 13 and asked whether or not this was one of the rules and regulations in force. Upon answering in the affirmative, plaintiff's counsel introduced this rule, which provides in substance that all employees in the licensee's department should be hired and discharged by the licensee "only through an employment office maintained in the building under the direction of the licensor, and all matters pertaining to the discipline of such employees shall be handled through such employment office . . . and only such help shall be employed in the licensee's department as shall be satisfactory both to the licensee and the licensor." Plaintiff was entitled to introduce this as tending to contradict the evidence of defendant's witness. Subsequently, defendant offered the other rules and regulations, which the court excluded on the ground that no proper foundation had been laid. This ruling may have been technically correct; in any event, the rules and regulations were not conclusive upon plaintiff and the error, if any, in the ruling, was not of sufficient importance to compel a reversal. We have examined the excluded rules which were marked for identifica-

tion and are in the record. They are 31 in number, regulating the manner in which the licensees shall conduct their business. They contain nothing of decisive importance to the issue made, although they rather tend to support the theory of plaintiff, namely, that the businesses of the licensees were under the control of the defendant.

It is next claimed that the verdict is excessive, but the brief presents very little, if anything, in support of this claim. Plaintiff testified that she was a waitress in Henrici's in Chicago, receiving a salary of $8 a week and board and averaging $7 a day in tips; that she was unable to work on account of her injuries from February 18 to June 22. Figuring roughly, this would aggregate a loss in income of about $800. Her bill for medical services was $156. She was burned in three places on her head, which the doctor described as third degree burns which extended through every layer of the skin. A physician testified that one of the burns was badly infected when he first saw her, about a week after she received the injuries. Plaintiff testified that for some three weeks she had to sleep sitting up in a chair because one side of her head was scorched so badly. We are unable to say that the amount of the verdict, $1,500, is excessive.

The jury could properly find that the defendant was liable for the injuries received by plaintiff, and as there were no reversible errors on the trial the judgment is affirmed.

*Affirmed.*

Matchett, P. J., and O'Connor, J., concur.