JOAN WALSH, Plaintiff-Appellee, v. PHEASANT RUN, INC., Defendant-Appellant.

(No. 59787;

First District (5th Division)—January 24, 1975.

Gates W. Clancy, of Geneva (James S. Mills, of counsel), for appellant.

Philip Howard and Philip Doran, both of Chicago (William J. Harte, of counsel), for appellee.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Plaintiff, injured in a horseback-riding accident, was awarded damages by the court in the amount of $18,600. Defendant appeals from this judgment contending that (1) plaintiff could not amend her complaint after the close of evidence to allege that defendant was estopped from denying ownership of the stables at which the accident occurred, and (2) even if the amendment was proper, the evidence did not support the necessary elements of estoppel. No contention has been raised concerning the findings as to the cause of plaintiff's injuries or the amount of damages awarded to her.

On June 14, 1969, plaintiff, a guest at the lodge owned and operated by defendant, was injured when she fell from a horse at a nearby riding stable. She filed a complaint alleging that both defendant and Homestretch, Inc., owned and maintained the stable, and that their negligence in maintaining their equipment and training their employees was the proximate cause of her injuries. In her first amended complaint one Jerry Farmer was added as a defendant. Subsequently, following the entry of a permanent restraining order in bankruptcy, Farmer was dismissed from the suit. In its answer Homestretch admitted ownership and control of the stable but denied plaintiff's other allegations. Defendant denied ownership and control of the stables. The case proceeded to trial.[1]

We need summarize only that evidence which is relevant to the issues raised on appeal.

Pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 60) Edward McCardle, president of defendant, was called by plaintiff.[2] He testified that in June 1969 defendant owned a resort

---

[1] Prior to trial counsel for Homestretch, Inc., was given leave to withdraw, and a default order was entered against it.

[2] Section 60 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 60) provides in pertinent part:

complex known as Pheasant Run Lodge consisting of 10 or 11 buildings and approximately 170 acres of land. Defendant's employees ran various facilities for the benefit of guests at the lodge. Prior to June 1, 1969, these included the bars, swimming pool, restaurant, tennis courts and equestrian stable. After June 1, 1969, the stable was rented to Jerry Farmer under an oral lease. McCardle personally owned the land on which the stable and riding ring were located but some years earlier had leased the land to defendant. For 5 or 6 months prior to June 1, 1969, Farmer had been an employee of defendant. Following the rental of the stable to Farmer, a sign saying "Homestretch" was erected in front of those facilities. After June 1, 1969, defendant had nothing to do with the day-to-day operation of the stable. Its employees there were placed on Farmer's payroll. The public was not specifically alerted that defendant no longer ran the stable. After June 1, 1969, defendant referred all inquiries made by lodge guests concerning the stables to that facility. The lodge had a telephone extension to the stable for the convenience of guests who wished to make riding reservations.

Defendant employed a public-relations manager. Advertisements were placed in Chicago newspapers and radio ads may have been used as well. Defendant distributed printed material to lodge guests explaining the various services which were available to them. These brochures were placed at the front desk and possibly in the rooms. An informational or "locater" sheet (plaintiff's Exhibit 1) was admitted into evidence. It consisted of a map of the resort complex and depicted the availability of the stables directly across North Avenue from the lobby and offices. A brochure (plaintiff's Exhibit 2) was admitted into evidence which portrayed the activities available to lodge guests. Prominently pictured were two people riding horses. The brochure included the following copy:

"Of course, these are also, all of the usual activities found at a fine resort  *  *  *  shuffleboard, horseback riding, tennis, billiards, pingpong, skeet shooting, water skiing and fishing."

A receipt (plaintiff's Exhibit 3) bearing the letterhead:

"PHEASANT RUN FARMS
P.O. Box 64
St. Charles, Illinois, 60174
RACE HORSES-HUNTERS-JUMPERS"

was admitted into evidence. The post office box and telephone number

"Upon the trial of any case any party thereto or any person for whose immediate benefit the action is prosecuted or defended, or the officers, directors, managing agents or foreman of any party to the action, may be called and examined as if under cross-examination at the instance of any adverse party."

listed on the receipt were defendant's. The receipt was dated June 14, 1969.

James Walsh, husband of plaintiff, testified on her behalf that she was injured in an accident at the stable's riding ring on the afternoon of June 14, 1969. He knew that riding was available from previous visits to the resort. He had probably seen the "locater" sheet and brochure (plaintiff's Exhibits 1 and 2) on the night he and his wife checked into the lodge. He identified plaintiff's Exhibit 3 as the receipt he had received at the stable on the afternoon of his wife's accident.

Plaintiff testified on her own behalf that at the time of her accident she was 32 years old. She was an experienced horsewoman who had received extensive equestrian training. She identified plaintiff's Exhibits 1 and 2 as being on the desk of her room when she arrived at the lodge on the evening of June 13, 1969. On June 14 when she inquired about riding facilities, lodge employees directed her to the stables. She identified plaintiff's Exhibit 3 as the receipt which her husband received at the stables.

Plaintiff's counsel read into the record McCardle's answers to interrogatories wherein he acknowledged defendant's ownership of the tacking equipment and riding stock used at the stable on June 14, 1969.

Suzanne McCutcheon testified for defendant that she had been employed by defendant in May 1969. On June 14, 1969, she worked for Homestretch, Inc. Many townspeople as well as guests of the lodge used the stables. On June 14, 1969, there was a large sign in front of the stables that said "Homestretch." Although she did not know for sure, there may have been a procedure for charging use of the stables to a lodge guest's bill.

Jerry Farmer testified for defendant that beginning in May 1969 and culminating on June 1, 1969, the stable and restaurant operations were gradually transferred from defendant to Homestretch, Inc. By June 14, 1969, a large "Homestretch" sign had been painted and erected in front of the stable. He decided to operate the stable after a discussion with McCardle. He had a month-to-month lease which included rental of tack equipment, horses and use of the facilities. A written agreement was executed, but it was "unavailable at the time of trial; it was stored in a basement that was flooded." A dual billing system was employed so that lodge guests' bills were collected by defendant and repaid to Homestretch. People off the street were not similarly afforded the opportunity of charging their bills. He continued to use defendant's printed receipts after taking over operation of the stables. Farmer's "Statement of Affairs" filed in support of his bankruptcy petition was admitted into evidence without objection. In it he averred that he was "engaged in the horse

business at Pheasant Run Farms, St. Charles, Illinois, from September 1, 1968, to September 1, 1969."

At the close of evidence plaintiff was permitted to file a second amended complaint inserting the following paragraphs:

"5. That at the time and place aforesaid the plaintiff relied on the reputation of the defendant insofar as providing safe and proper supervision over those recreational activities which were represented as being conducted by defendant, Pheasant Run, Inc.

6. That relying upon these representations the Plaintiff became a patron of the Pheasant Run riding stables which stable operation was being conducted on the premises of Pheasant Run."

Defendant raised no objection to this portion of the proposed amendment.

OPINION

■■ Defendant contends that plaintiff should not have been allowed, after the close of evidence, to file a second amended complaint. Specifically, it is argued that paragraphs 5 and 6 alleging that defendant was estopped to deny ownership of the stables set forth a claim that could only "appear on the face of the initial pleading." However, as we have noted above, defendant failed to raise any objection to the filing of the equitable estoppel allegations below, and consequently we believe that it has waived this issue on appeal. *Senese v. City of Chicago,* 88 Ill.App. 2d 178, 232 N.E.2d 251.

Defendant has also contended that even if the second amended complaint was properly before the court, "the evidence did not support the necessary elements of estoppel." Defendant argues that in order to establish an equitable estoppel, plaintiff was required to prove that its misleading conduct was the proximate cause of her injuries. Consequently it is claimed that since negligent acts or omissions at the stable caused her injuries, and not representations as to who owned it, defendant cannot be held liable. We disagree.

■■ Where a defendant holds "itself out as one engaged in maintaining and operating [a] business in the course of which the negligence arose," it may be held liable. (*Trust Company of Chicago v. Sutherland Hotel Co.,* 389 Ill. 67, 73, 58 N.E.2d 860; see also *Burke v. Piper's Super Service Stations,* 312 Ill.App. 656, 38 N.E.2d 785; *Cornwell v. Leiter Building Stores, Inc.,* 259 Ill.App. 460.) In *Cornwell,* for example, where defendant proprietor of a store building granted a license to a merchant to operate a beauty parlor in the building, the court held that since defendant held itself out as the owner and operator of the beauty shop,

and these representations were reasonably relied upon by a patron of that facility, defendant could properly be held liable for injuries she suffered when she received a permanent wave of her hair.

■■ In the instant case we believe that the evidence clearly demonstrates that defendant held itself out as the owner and operator of the stables. Defendant distributed to its guests brochures and promotional literature indicating the availability of horseback riding facilities at the resort. This material was placed in the lobby and guest rooms of the lodge even after June 1, 1969, the ostensible date of the transfer of the stables to Homestretch. The manner in which the stables were operated was apparently unaffected by the transfer. Guests continued to charge their horseback riding expenses to their bills at the lodge. The stables continued to issue receipts headed "Pheasant Run Farms." Papers filed in support of Farmer's bankruptcy petition indicate that during the period in question the stables were operated under the name "Pheasant Run Farms." Although evidence was introduced to the effect that a "Homestretch" sign had been placed in front of the stables, there is considerable conflict in the testimony as to whether the sign had been erected and painted by June 14, 1969, the date on which plaintiff was injured. Moreover, the mere presence of a sign labeled "Homestretch" was more than counterbalanced by the manifestations of continued ownership and operation of the stables by defendant.

The record also demonstrates that plaintiff relied on defendant's representations of ownership and operation of the stables. She testified that she went to the "Pheasant Run Stables" because "I have taken riding instruction—that I would like to ride someplace where I'm half way sure that things are well cared for, that everything is in good condition and I can be completely well, confident of the horse I'm going to be riding."

In light of this record, we believe that a finding that defendant was estopped from denying ownership and thus was liable was not against the manifest weight of the evidence. Accordingly, the judgment entered below is affirmed.

Affirmed.

BARRETT, P. J., and LORENZ, J., concur.