15053

GOOGE v. SPEAKS *ET AL.*

(9 S. E. (2d), 439)

*Messrs. Searson & Searson,* for appellant,

*Messrs. Tobias & Turner, H. P. Ragland* and *C. W. Brannon,* for appellant,

*Messrs. Blatt & Fales, Brown & Watts, Thos. M. Boul-ware* and *John L. Bowden,* for respondent,

April 2, 1940.

*Per curiam.*

This is an action to recover damages for personal injuries sustained by reason of the overturning of a motor truck while being driven by the plaintiff. While both negligence and recklessness are alleged, in view of the fact that the jury found actual damages only, the pleadings may be considered as if involving negligence only.

The complaint alleges that the defendant, Sinclair Refining Company, owns a gasoline station and equipment in the Town of Fairfax, referred to in the testimony as a bulk plant, and that it has an arrangement with the defendant, R. R. Speaks, whereby he sells and delivers products of the defendant company throughout Allendale and adjoining counties, and that for this purpose the defendants jointly used at the times in question a 1931 model Ford truck be-

longing to Speaks and a large metal tank belonging to the defendant company, which the defendants jointly had attached to the truck. It is also alleged that the defendant company furnished the tank and that the defendant Speaks furnished the truck and the driver thereof, to wit: the plaintiff, who, prior to January, 1937, was employed by Speaks in the handling of produce not connected with the "joint business of the defendants"; but that in January, 1937, Speaks, under his contract with plaintiff for personal services, changed the plaintiff's duties from handling produce to the driving of the truck and gasoline tank; and that he was so engaged on March 25, 1938, when the injuries in question were sustained, "as the servant and employee of the defendant Speaks."

It is further alleged that the defendants jointly attached the tank to the truck, and at that time knew the size and condition of the truck and the size and weight of the tank in its position on the truck, and that each had personal knowledge that on account of the weight, size and condition of the tank this made the truck a dangerous means of conveyance, "particularly if and when the bushings in the said truck became worn." And it is also alleged that the bushings did become worn, and that a short time before March 25, 1938, the defendant, Speaks, as the owner of the truck, had the same repaired, but that the work on the bushings was not properly done or completed, whereupon the plaintiff so notified Speaks, and he promised that the repairs would be promptly made; but this promise was not fulfilled.

It is further alleged that the defendant company knew, or by the exercise of the slightest degree of care could have known, that it was maintaining its said tank in its said position on the truck while the said truck was in need of said repairs "and while the said repairs had been promised as above mentioned by the defendant Speaks."

It is further alleged that on the 25th day of March, 1938, while using the truck in the said condition and under the said promise of repairs the plaintiff drove the truck to Barn-

well to make a delivery and on his way back to Fairfax, at about 3:30 p. m., of that day, he had practically completed making the "S" curve across the Southern Railway a short distance north of Allendale, when in turning to the right with the curve the front wheels of the truck turned and became locked on account of not having had the needed repairs above mentioned and promised, "and naturally and consequently ran off of the road to the right down an embankment where it stopped upon the front wheels becoming crushed and knocked from under the front end of the said truck while the rear wheels were still upon the embankment of the road, and upon and while this was happening the said tank attached to the truck caused the truck to turn over on its left side by means of the momentum of the said tank and its height from the ground, causing the plaintiff to be pinned under the said truck and injured as hereinafter alleged."

It is further alleged that the wreck of the truck and the consequent injuries to the plaintiff were directly and proximately caused by the separate and concurring negligence of the defendants in three particulars, to wit: (a) failure of Speaks to use reasonable care to provide and furnish the plaintiff with a reasonably safe truck for hauling the tank and in failing to reasonably maintain the same in reasonably safe repair; "(b) the conduct of the Sinclair Refining Company in attaching, or permitting to be attached, the said large heavy tank on top of the said truck at a dangerous height, and so maintaining it, on a light truck which the said defendant knew, or by the exercise of the slightest degree of care could have known, was dangerously in need of repair and that such repair had been promised by the defendant Speaks;" (c) the conduct of the defendant company in leaving its large heavy tank in the possession of and under the control of its co-defendant while having actual knowledge of the reckless character of its said co-defendant "generally and particularly in hauling around over the highways of the State the said large heavy tank while attached

to a light and dangerously defective truck." (There is, however, no reference made in the evidence to specification (c).)

It is finally alleged that by reason of the promises the plaintiff suffered grave and serious personal injuries for which he demands $50,000.00 damages.

The defendants answered the complaint separately, and these answers contain general denials and set up contributory negligence and assumption of risk. The answers also set up the sole negligence of plaintiff, but that would be comprehended in the general denials.

The cause in due course came on for trial before Hon. M. M. Mann, presiding Judge, and a jury, at Allendale, on or about the 26th day of April, 1939. At the close of plaintiff's testimony the defendants moved for a nonsuit, and the motion was overruled. The defendant Sinclair Refining Company also moved at that time to be allowed to amend its answer by pleading that at the time of the accident referred to in the complaint this defendant had accepted and qualified under the provisions of the Workmen's Compensation Act, Act July 17, 1935, 39 St. at Large, 1231, and that the plaintiff had not rejected the same, so that if the plaintiff was an employee of this defendant his employment was governed by that Act, and that he has no right or authority to maintain this action. This motion was likewise overruled. Testimony was thereupon offered in behalf of the defendants, and at the close of all the evidence motions were made by the defendants for a directed verdict, which were overruled, and the case was submitted to the jury, which returned a verdict in favor of plaintiff against both defendants for actual damages in the sum of $15,000.00, upon which judgment was entered.

The motion of defendants seasonably made for a new trial was overruled, and the motion of Sinclair Refining Company to dismiss the cause for lack of jurisdiction by reason of the Workmen's Compensation Act was also overruled. Both of the defendants have appealed to this Court from the judgment entered on the verdict, and the defend-

ant, Sinclair Refining Company, also moves this Court to dismiss the cause for lack of jurisdiction by reason of the provisions of the Workmen's Compensation Act.

Counsel for the appellant, Sinclair Refining Company, in their brief reduce their exceptions to seven points, and counsel for the appellant Speaks in their brief reduce theirs to two points. But speaking in general terms, all of the exceptions raise only two issues, to wit: Should the presiding Judge have directed a verdict for each of the defendants on the merits of the cause, and, did the Court err in its rulings relating to the Workmen's Compensation Act?

In considering the question as to whether a verdict should have been directed there are involved three specific inquiries, to wit: (1) Was there sufficient evidence to take the case to the jury on the question of negligence; (a) as to Speaks; and (b) as to Sinclair Refining Company; (2) Was the evidence of contributory negligence conclusive, and (3) Was the evidence that the plaintiff assumed the risk conclusive?

Referring to the appellant Speaks: It will be observed that the complaint alleges, and the evidence admittedly shows, that the relationship of master and servant existed only between him and the plaintiff. Hence it was unquestionably the duty of Speaks to exercise reasonable care to provide a reasonably safe motor truck for the use of plaintiff and to maintain the same in a reasonably safe condition. And while the inferences which may be drawn from the evidence are quite conflicting, it was ample to require the submission of the case to the jury on this issue, so far as actionable negligence on the part of the defendant Speaks is concerned.

In connection with the defenses of contributory negligence and assumption of risk, it is contended that the plaintiff in and about his employment by the appellant Speaks had complete control of the equipment, but the evidence in behalf of the plaintiff is specific to the effect that while the plaintiff brought to the attention of Speaks such repairs as should be made to the truck, Speaks himself recognized

and assumed the obligation and duty of having the same made; and the plaintiff himself expressly testified that shortly prior to March 25, 1938, the date the wreck occurred, at his instance Mr. Speaks had certain repairs made to the truck, but that the plaintiff found that the bushings in the king-pins had not been put in properly, and that he so informed Mr. Speaks who "promised that he would have it fixed just as soon as he had time and that he could not spare the truck at that time." And the plaintiff further testified that he continued to operate the truck, relying on this promise of Speaks to have it repaired.

Mr. Speaks himself testified that the plaintiff from time to time told him about the different repairs that were needed, and that when any repairs were necessary they tried to have the same made as promptly as possible "and always would have it done." He further testified with reference to the repairs made just a short time before the wreck that plaintiff then said that the truck "was in perfect condition." But these conflicts in the evidence were of course for the jury.

In view of the testimony of the plaintiff, although it was denied, of a promise made by Speaks and unfulfilled with reference to certain repairs, and the testimony of plaintiff that he relied on such promise, it could not be said as a matter of law that contributory negligence or assumption of risk had been conclusively established. *Kell v. Rock Hill Fertilizer Co.*, 123 S. C., 199, 116 S. E., 97; and *Tuttle v. Hanckel*, 179 S. C., 60, 183 S. E., 484.

With reference, however, to the appellant, Sinclair Refining Company, this Court has carefully reviewed the record and is unable to find any evidence of actionable negligence on its part.

The contract introduced in evidence made November 15, 1937, by and between Sinclair Refining Company and R. R. Speaks is set forth in the Transcript of Record. Under this contract Mr. Speaks became the agent for the sale and delivery of products of the company on a commission basis,

and the terms and conditions of such agency are set forth in the contract in great detail. Among other things it is provided (in Section 8) as follows: "The agent shall at his own expense furnish necessary teams, trucks, motive power, drivers, labor, water, light, power, and heat, and shall also pay all necessary expenses in draying the Company's products and equipment, and in making sales, deliveries, and collections."

Section 9 of the contract is as follows: "Agent shall be responsible for, and hereby assumes all responsibility for, any and all acts of Agent's employees, whether they be acts of commission, or omission, resulting in loss or damage to the Company, and Agent hereby agrees to indemnify, save harmless, and reimburse Company for and on account of any such acts of Agent's employees."

Judge Mann correctly held that under this contract Mr. Speaks was an independent contractor, so far as his employees are concerned, and as has already been stated, the complaint herein does not allege that the plaintiff was the servant or employee of Sinclair Refining Company. Judge Mann concluded, however, that there was evidence that the contract had been departed from, or that relationships may have been created outside of and beyond the contract, and in effect he left it to the jury to say whether or not the defendant Speaks had become the agent of the defendant company with reference to the maintenance of the truck and tank in question. But there is not the slightest evidence even remotely tending to sustain such a conclusion, unless it be the fact that the defendant company made a loan of a tank to the defendant Speaks and charged him nothing for the use thereof. Moreover, there is no evidence that the defendant company had anything to do with the attaching of the tank to the truck, although the company may be charged with knowing this had been done by reason of the fact that its auditors from time to time saw the truck with the tank thereon. But it is manifest that the tank was not defective, and its use on the truck in question was not in-

herently dangerous. And the plaintiff, who was an experienced truck driver, never made any complaint whatsoever that the tank was too heavy to be attached to a truck of that kind, or that it was hazardous in any respect, although he used it for about fifteen months.

But even if the defendant company could be charged with any responsibility by reason of the attachment of the tank to the motor truck, because it loaned the tank to Speaks, there is no evidence of negligence in this respect. The following testimony of J. L. Holland, an automobile mechanic, stands absolutely undisputed and uncontradicted in the record:

"Q. That size tank, that is, a 402-gallon tank, standard equipment for a chassis such as used in this case? A. Yes, sir; it was used by the Company at that time. I know we used to use the same size tank on a Model T truck because we used to run the Standard Oil place in Hampton.

"Q. And nothing wrong with using that size tank on that kind of a vehicle? A. No, sir; there is not.

"Q. And customary to use that same size tank on that motor, or on that type of vehicle? A. Yes, sir; I think so. I know I have helped to put on a good many."

Furthermore, we do not think the evidence admits of a reasonable conclusion that the tank was the proximate cause of the wreck or accident, or a concurring proximate cause thereof. It is true that the plaintiff testified that the tank "was heavy and leaned over toward the outside of the curve," when being driven around a curve, but he does not in any manner attribute the wreck to this natural circumstance, but on the contrary his testimony is clear and explicit as to the cause of the accident, as will definitely appear by reference to the following excerpts from his testimony:

"Q. Let me ask you this question. What will cause a steering gear to lock? A. The steering gear did not lock.

"Q. Did the wheels lock? A. Yes, sir.

"Q. Do you attribute that to the different size of the tires? A. No, sir.

"Q. *What do you attribute that to?* A. *Worn bushings and bushings that you could not grease.*

\* \* \*

"Q. I am going to ask you to tell us what caused that truck to get out of your control? A. The front wheels locked to the right.

"Q. Due to what? A. *I say due to bad bushings.*

"Q. *Due to the fact that you could not grease the bushings?* A. *Yes, sir.*

"Q. And the conditions you had complained of to Mr. Speaks? A. Yes, sir. (Italics added.)

Indeed, the ultimate ground of liability so far as the defendant company is concerned, according to plaintiff's theory, is that the defendant company became liable to the plaintiff for the alleged failure of the defendant Speaks to keep his motor truck in repair, especially with reference to the bushings. Under the written contract the company was obviously not liable to the plaintiff with regard to the furnishing or maintenance of the truck. Can the mere fact that the company loaned (or furnished) the tank, which was not a proximate cause of the wreck, tend to charge the company with the responsibility of keeping the truck in repair? To state such a question is to answer it in the negative.

The most recent case decided by this Court bearing any analogy to the case at bar is that of *Hubbard v. Rowe,* 192 S. C., 12, 5 S. E. (2d), 187, 190, in which a verdict was found for the plaintiff against the defendant, Standard Oil Company, for injuries received by the plaintiff, employee of the company's agent, Rowe, in handling and dispensing gasoline at a filling station. In that case the contract between the company and Rowe, while it required him to employ at his own expense, and under his own supervision and direction, any and all salesmen, laborers, and other help, the company was to furnish "such equipment and supplies as may be necessary for the proper handling" of its products; and this latter provision definitely distinguishes that case from the case at bar.

The Court there held by implication that under certain circumstances a company may be held liable for injuries "resulting from the use of *defective equipment supplied and serviced by it* (a) to an employee actually employed by it, or (b) to an employee of one of its agents who used such equipment, or (c) to any member of the public injured by reason of the defects in the equipment, (but) in order to properly prepare and present its defense or defenses, it has the legal right to know upon which of these relationships the plaintiff's action is based." (Italics added.) And it was further held that the complaint in that case should be amended, so that it might appear upon what relationship the plaintiff's action was based; and the judgment was reversed and the case remanded to the Circuit Court for a new trial on grounds which we need not consider here.

In the case at bar we are of opinion that the complaint was sufficiently definite to show the theory upon which the plaintiff seeks to hold the defendant company, to wit, that the company should be held liable for injuries resulting from allegedly defective equipment supplied by it and used by an employee of one of its agents. But there is a failure of proof of any actionable negligence on the part of the company in this respect, for the reason that the tank loaned or supplied by the defendant company was not defective or dangerous in itself, nor was the defendant company in anywise negligent concerning the same.

One of the cases strongly relied on by the plaintiff is the well-considered case of *Tate v. Claussen-Lawrence Construction Company*, 168 S. C., 481, 167 S. E., 826, wherein it is held, in line with the authorities generally, that notwithstanding the written contract between the parties other relationships may arise between them growing out of their course of dealings, so that an employee may be an independent contractor as to certain work, and yet be a mere servant as to other work for the same employer. But this conclusion must have a reasonable basis in the evidence, especially in view of the factual presumption that the contract was

controlling and covered all the relationships between the parties.

We think, therefore, that the conclusion hereinbefore indicated that there is no evidence in the record which would support a verdict against the defendant, Sinclair Refining Company, is correct, although viewing the evidence most favorably to the plaintiff, and that hence Judge Mann should have directed a verdict in favor of this defendant upon the ground that there is no actionable negligence which could be charged against it. Hence, it is unnecessary to consider in this connection the affirmative defenses of contributory negligence and assumption of risk. But we may add that if the use of the tank in question was hazardous in any respect, the evidence is, in our judgment, susceptible of no reasonable inference other than that the plaintiff assumed such risk.

Referring to the rulings of the presiding Judge relating to the Workmen's Compensation Act, we are of opinion that no jurisdictional question is involved. The enactment of the Workmen's Compensation Act did not deprive the Court of Common Pleas of jurisdiction of actions relating to master and servant, because unless the terms of that Act are accepted, either expressly or impliedly, by the master and the servant, the common law remains applicable. Hence, it seems to us that where a defendant contends that the Workmen's Compensation Act is applicable the duty is upon it to set it up by way of special defense. Of course this does not mean that the Act must necessarily be pleaded by name, but there must be sufficient allegations of fact to show the Court that the case comes within the provisions of the Act.

We are in agreement with counsel for respondent that the questions involved here are rather procedual than jurisdictional, and as indicated in a note in 71 C. J., 1501, such a defense on the part of the employer has been held not a lack of jurisdiction in the Court but a want of a cause of action in the plaintiff. Moreover,

in view of the fact that the acceptance of the Workmen's Compensation Act depends upon consent, express or implied, we see no reason why the employer may not waive the provisions of the Act if he should see fit to do so.

It will be observed that in each of the cases of *Ward v. Ocean Forest Club, Inc.,* 188 S. C., 233, 198 S. E., 385, and *Marchbanks v. Duke Power Company,* 190 S. C., 336, 2 S. E. (2d), 825, the defendant expressly pleaded that the case came within the terms of the Workmen's Compensation Act, and that the plaintiff's exclusive remedy, if any, was under that Act; and we are of opinion that counsel in those cases followed the proper practice in this regard.

While the law is not uniform in other states, for some Courts hold that the employer may plead want of jurisdiction, and others hold that the defense is available under the plea of the general issue, we believe the general prevailing rule is as stated in 71 C. J., 1501, to wit: "The rule commonly is that where an employer relies upon a compencation act in defense, or upon a defense which the compensation act has taken away from those not electing to come within it, the burden of pleading the election to come within, that he is a subscriber under, or that he has complied with, the act is upon the employer; where defendant is required to plead contributory negligence as a defense, an employer must plead that he is not within a compensation act depriving certain employers of that defense."

The proposed amendment was not one which could be properly allowed after the trial had been entered upon, but even if the matter had been a discretionary one we think Judge Mann correctly exercised his discretion in refusing to allow the amendment, especially in view of the fact that if the defendant company had been liable to the plaintiff under the Workmen's Compensation Act, more than a year had elapsed at the time of the trial and therefore the plaintiff would have been barred by lapse of time from making any claim under the terms of that Act.

Indeed, we think the reasoning of the case of *Mims v. A. C. L. Railroad Company,* 100 S. C., 375, 85 S. E., 372, which was affirmed by the Supreme Court of the United States, 242 U. S., 532, 37 S. Ct., 188, 61 L. Ed., 476, is substantially conclusive upon this phase of the case at bar. That case involved, so it was contended, the Federal Employers' Liability Act, 45 U. S. C. A., § 51 *et seq.,* and this Court held that it was necessary to allege facts bringing the case under the statute, although of course not necessary to plead the statute in specific terms, and allusion was made in the opinion of the Supreme Court of the United States to the fact that to allow an amendment pleading the statute after the second trial had been entered upon would have been improper, especially as it might defeat plaintiff's claim under the statutes of limitations.

Judge Mann was right in his rulings in this connection; and the motion of the defendant company to dismiss the case here for want of jurisdiction should be, and it is hereby, overruled.

The judgment of the Circuit Court is affirmed as to the appellant, R. R. Speaks, and is reversed as to the appellant, Sinclair Refining Company, and the case is remanded, with instructions that judgment be entered in its favor.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and FISHBURNE and MESSRS. ACTING ASSOCIATE JUSTICES E. C. DENNIS and WM. H. GRIMBALL, concur.