15523

TEDARS *ET AL.* v. SAVANNAH RIVER VENEER COMPANY
*ET AL.*

(25 S. E. (2d), 235)

June, 1942.

*Messrs. Williams & Busbee,* of Aiken, S. C., and *Mr. Nathan Jolles* and *Mr. I. S. Peebles,* both of Augusta, Ga., Counsel for Claimants,

*Messrs. Hendersons & Salley,* of Aiken, S. C., and *Messrs. Bussey & Fulcher,* of Augusta, Ga., Counsel for Employer and Insurance Carrier,

Counsel for Claimants, in Reply,

Counsel for Employer and Insurance Carrier, in Reply,

April 2, 1943.

The unanimous Opinion of the Court was delivered by Mr. Associate Justice Stukes.

Appellants are the next of kin of Henry Grady Smith, having been substituted as claimants for their brother in this proceeding for workmen's compensation. The latter was dependent upon the deceased employee but died pending the proceeding. Smith, the employee, worked for the Veneer Company as a timber "spotter". He lived in the City of Augusta, Georgia, and it was found that ninety per cent. of his work was in that state and ten per cent. in South Carolina. The employer is a South Carolina corporation with its office and place of business at North Augusta, in this State. Smith had never lived in South Carolina and maintained his home in Georgia as stated, where his invalid dependent brother resided with him.

He met death in an automobile accident, riding alone when his car was in violent collision with a bridge abutment on a Georgia highway over a hundred miles in that state from his Augusta home and not far from the City of Savannah. He was en route there late on a Saturday afternoon, after usual work hours, to visit his sister, one of appellants, but he had notified the employer's general manager that on the trip he would see one or more persons in negotiations looking toward the procurement of timber, raw material for the employer. Respondents strongly resisted the finding of the Commission, sustained on appeal by the Circuit Court, that

the accident occurred in the course of his employment so in that respect an award of compensation was warranted. This issue is tendered in the present appeal by the submission by respondents of their position in that connection as a ground upon which to sustain the judgment. But in the view taken by this Court this issue is not necessary to be determined, as will be seen.

As indicated, the Industrial Commission made the usual award of death benefits but upon appeal the lower Court set aside the award, overruling the grounds of appeal of the present respondents relating to their contention that the death did not occur in the course of decedent's employment, above alluded to but sustained their position that Smith's residence without the State barred any award of compensation, and the latter issue is for determination by this Court. The contentions of the present appellants will be considered in the order in which they have argued them in their printed brief.

The applicable statute law is the following quoted portion of Section 36 of the original Compensation Act, now Section 7035-39 of the Code of 1942: "Where an accident happens while the employee is employed elsewhere than in this State which would entitle him or dependents to compensation if it had happened in this State, the employee or his dependents shall be entitled to compensation, if the contract of employment was made in this State, if the employer's place of business is in this State, *and if the residence of the employee is in this State;* provided his contract of employment was not expressly for service exclusively outside of the State." (Emphasis added.)

This Section of the Statute was before this Court for construction in the recent case of *Price v. Horton Motor Lines,* 1942, S. C., 23 S. E. (2d), 744, 745, where the following analysis was made: "It will be seen from the foregoing that there are four prerequisites to the South Carolina Industrial Commission having jurisdiction: (1)

The contract of employment must be made in this State; (2) the employer's place of business must be in this State; (3) the residence of the employee must be in this State; and (4) the contract of employment must be for services to be performed not exclusively outside of this State".

There the issue was whether claimant resided in this State, he apparently conceding that unless so our Industrial Commission had no jurisdiction to award compensation on his accidental injury, which occurred in Georgia. That case comes very near being this, the vital distinction being of course the different places of residence of the respective employees, the one within and the other without the State.

Appellants first argue that waiver and estoppel arise in their favor and that the case should turn upon application of these doctrines. There was no express finding of such by the hearing commissioner or the commission. The record indicates that these questions were injected first by appellants in their argument before the Circuit Judge (and emphasized in this Court), and he considered and dismissed them. In like manner passing over the question of the propriety of considering these contentions in the absence of any finding thereabout by the commission, we have examined them with care and find no merit.

The hearing commissioner, whose findings were adopted by the commission on appeal, based his conclusion apparently on the whole matter, on the case of *Ham v. Mullins Lumber Company,* 193 S. C., 66, 7 S. E. (2d), 712, which he said was "similar," in fact "practically indentical," evidently overlooking the factual difference most important in this connection, that Mr. Ham was a resident of this State whereas it is admitted in the instant case that Mr. Smith resided in Georgia.

But appellants argue that the following facts are in the record and estop respondents to deny that decedent came within the compensation law and liability of the insurance carrier in the case of the extra-territorial accident here in-

volved: (1) The employer knew of his residence in Georgia and made no objection; (2) his payroll was included in the computation of premiums on the insurance; (3) the contract of employment was a South Carolina contract with a South Carolina employer; and finally (4) that the employer "thought" the employee was "covered." (Undoubtedly he was, so far as accidents in South Carolina were concerned, and for that liability the insurer was entitled to premiums.) It should be observed that all of the parties were charged with knowledge of the law, and its provisions entered into the terms of their contracts; that they contracted with reference to it requires no citation of authority and the compensation law expressly incorporates its terms into all employment agreements and insurance contracts entered into thereunder. 1942 Code, Sections 7035-6 and 7035-75.

The findings of facts entering into the establishment of jurisdiction of the commission to make an award are subject to review by the Courts, unlike ordinary factual findings. It is hornbook law that ordinarily facts are exclusively for the commission and its findings thereof will not be disturbed on appeal if there is any competent evidence in the record supporting them. 1942 Code, Section 7035-63. But, as stated, it is otherwise in the case of jurisdictional facts. It was said in *Knight v. Shepherd*, 191 S. C., 452, 4 S. E. (2d), 906, 907: "It is suggested that we are bound by the fact finding of the South Carolina Industrial Commission, which held that it lacked jurisdiction. It is true that as to disputed facts which do not go to the jurisdiction, we are bound by the finding of the Commission, but where the only question presented is whether or not the jurisdictional fact exists entitling the claimant to be heard before the Commission, we have a right to review the action of the Commission, even to the extent of finding the fact to be other than the Commission found it".

See also *Yeomans v. Anheuser-Busch*, 198 S. C., 65, 15 S. E. (2d), 833, 136 A. L. R., 894.

Appellants earnestly urge that from the facts above enumerated the commission impliedly found that waiver and estoppel gave it jurisdiction of this Georgia accident despite the plain provision of the statute because it said: "It is found as a fact that all parties to this case are subject to and bound by * * * the Workmen's Compensation Act of South Carolina." Even if the stated implication is warranted and is based upon factual findings, it is subject to the scrutiny of judicial review, as we have seen.

And we find no sufficient basis for waiver or estoppel in the facts mentioned. Basic elements are missing. There was no evidence of the relinquishment of a known right by respondents and no reliance by decedent upon misrepresentation, so far as the record shows. There is no intimation in the facts that he was misled. Inclusion of the deceased employee in the compensation law as to accidents in this State, which unquestionably existed, is consistent with and sufficiently explains all of the representations and agreements allegedly implied by the cited facts.

Painstaking study of the record has disclosed nothing which would not appear in any other employment of a nonresident by a South Carolina employer (subject to the compensation law) in duties without the State, so to follow appellants would result in conspicuous and complete "judicial legislation" and a flaunting of the law as written by the legislature.

Our conclusion upon the question (in affirmance of that of the trial Judge) is consistent with *Knight v. Shepherd, supra,* where jurisdiction of our Industrial Commission was upheld; there award was made to a resident of Georgia for disability from accident suffered in this State resulting from employment here by a Georgia employer under a Georgia contract. The controlling difference is, of course, that in this case the accident was in another state and one of the conditions for jurisdiction does not obtain—local residence of the injured employee.

In this view, that there was insufficient evidence at most to warrant a finding of waiver or estoppel by the commission, if indeed it intended to so find as contended by appellants, it is unnecessary to consider the principle urged by respondents that jurisdiction of the subject-matter of a Court or *quasi*-court, which the commission is, cannot be founded upon waiver or estoppel. See South Carolina cases in point, 9 S. E. Dig., 326, 327, Courts, Key 24.

The next contention is that the last "and" in the quoted provision of statute should be read and interpreted "or" so that the condition of the employee's domestic residence should be alternative rather than conjunctive with the other conditions of compensability of an accident occurring without the State. The argument invokes the well-established principle of statutory construction that the Court will change a word in order to conform the verbiage to the plain object and intention of the statute and not to do so would leave the latter meaningless or absurd.

In an opinion written for this Court by Mr. Justice Charles A. Woods, afterward a distinguished member of the Federal Circuit Court of Appeals, the rule was stated, in part, as follows in the case of *Stackhouse v. County Board,* 86 S. C., 419, 68 S. E., 561, 562:

"However plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning, when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature, or would defeat the plain legislative intention; and if possible will construe the statute so as to escape the absurdity and carry the intention into effect.

\*        \*        \*

"While this rule is generally recognized, the courts in applying it should exercise circumspection to avoid any effort to amend statutes. The principle depends upon the absurdity being manifest and the legislative intent obvious."

In the subsequent case of *In re: Cow Castle Drainage District,* 107 S. C., 310, 92 S. E., 1036, 1037, this Court declined to change an "or" to "and" and quoted from Potter's Dwarris, page 143, as follows: "It is not permitted to interpret what has no need of interpretation. When an act is expressed in clear and precise terms, when the sense is manifest and leads to nothing absurd, there can be no reason not to adopt the sense which it naturally presents. To go elsewhere in search of conjectures in order to restrain or extinguish it·is to elude it."

Consideration of the foregoing authorities establishes the inapplicability of the rule to the present controversy. The statute here is too plain to permit application of the rule and its clearly apparent object and intent would be frustrated by such application.

But it is further and finally contended that if residence of the employee within the State is required by the statute in the case of accident without the State, as we have seen it is, then such provision is void because it is violative of the Federal Constitution, Article 4, Section 2, and the 14th Amendment, Section 1; and is also in contravention of the corresponding provisions of our State Constitution, Article 1, § 5. These twin attacks will be treated together for they are so alike that considerations pertinent to one are similarly applicable to the other, and appellants have so argued them. They relate, of course, to the "Privileges and Immunities," "equal protection of the laws," and "due process" clauses of the Constitutions.

Appellants rely largely on the case of *Quong Ham Wah Co. v. Industrial Accident Co.,* 1920, 184 Cal., 26, 192 p. 1021, 12 A. L. R., 1190, *Id.,* 255 U. S., 445, 41 S. Ct., 373, 65 L. Ed., 723. After rehearing and reversal of opinion the California Court held, by three separate opinions, as contended by appellants here, that the requirement of their compensation law of residence in the State of an employee injured without the State in order to give the commission

jurisdiction was an unconstitutional discrimination against citizens of other states, whereupon the law was construed by deletion of this requirement and automatically extended to include non-residents as well as residents involved in extra-territorial accidents. Upon reading the several opinions of the various justices and the subsequent judgment thereon of the Supreme Court of the United States, it is evident that the California Court got into its difficulty from which it found the tortuous route indicated by considering the injured employee a non-resident of the State of California, whereas he was employed there and the Supreme Court of the United States said in the opening paragraph of its opinion that the employee was a resident of California. On this account the learned Circuit Judge who tried this case declared that all that was said by the Court on the subject under examination was *obiter dictum*. Another pitfall was the seemingly unnecessary construction of the term "resident" in the California statute to mean "citizen," the error of which will be plainer as this discussion progresses.

The Federal Supreme Court dismissed the *writ of certiorari* before it expressly for want of jurisdiction. The stated procedure was undertaken by the employer with the view of having the whole section of the law relating to extra-territorial accidents declared unconstitutional, apparently so that the California Commission would have no jurisdiction of such extra-territorial accidents whether suffered by residents or non-residents, which result respondents here say should obtain in this case, should the South Carolina law be found unconstitutional as contended by appellants. The want of jurisdiction of the Supreme Court of the United States of the case is evident for the California. Court had construed its statute so as to leave no possible Federal question. The former Court made that plain and repeated it, and said that it was without authority to review and revise the construction affixed to a state statute *as to a state matter* by the Court of last resort of the State.

The reasoning of the California Court is far from convincing and it was shortly afterward made the subject of an annotation in 12 A. L. R., 1207, in which the editor said: "It may be suggested that since the employer would have been liable either way the case was decided, it had not such an interest as would enable it to attack the constitutionality of the act. A question also arises as to the soundness of the decision in broadening the act and extending the benefits of the Compensation Act in case of injuries to a non-resident in another state who was employed under a contract made within the state. Such a construction, in view of the Legislature's intention as evinced by the phraseology of the act, confining its operation to residents, seems to closely border on judicial legislation."

There is a subsequent decision of the United States Supreme Court which we do not find cited in the briefs of counsel, but which we consider somewhat in point. It is *Liberato v. Royer*, 270 U. S., 535, 46 S. Ct., 373, 374, 70 L. Ed., 719, opinion by the eminent Justice Holmes, in which the question arose on account of the alienage of alleged beneficiaries under the Workmen's Compensation Law of Pennsylvania. The following quotation from the opinion is specially interesting in view of the present appellants' emphasis in argument that the South Carolina Compensation Law is a voluntary act rather than a compulsory one: "Then the Compensation Act offers a plan different from the common law and the workman is free not to come in under it. If he does, of course, all benefits dependent on the new arrangement are matters of agreement and statutory consequences of agreement and cannot be carried further than the contract and statute go. One of those benefits is compensation irrespective of the cause of death, but it is confined to residents. Whether the workman's election to take advantage of the statute could be made a bar to a suit by his parents alleging a wrong is not before us here, but the right to recover without alleging fault depends on the terms of the Act."

Section 36 of our Act (1942 Code, Section 7035-39) appears to have been copied from the earlier compensation law of our sister State of North Carolina (as is well known, much of our Act was) and their Section 36 is identical. The Supreme Court of that state had the present problem before it in *Reaves v. Earle-Chesterfield mill Co.*, 1939, 216 N. C., 462, 5 S. E. (2d), 305, 306. There the employer and the contract of employment were in North Carolina, but the injured employee resided in South Carolina and the accident occurred in this State. The Court analyzed the section in question just as was done by this Court in the *Price-Horton Motor Lines case, supra,* and said: "All these circumstances [including domestic residence of the employee—interpolated] must combine to give the jurisdiction." The case of *Quong Ham Wah, supra,* was mentioned upon the question of the constitutionality of the residence requirement but was not followed, and the following occurs in the opinion:

"The apparent difficulty which the State might be under in extra-territorial extension of its laws, affecting the rights of residents of other states, and the extent to which this State may be able to protect its own citizens and industries by giving its laws and the orders of the Industrial Commission such extra-territorial effect, is sufficient ground to sustain the jurisdictional classification that the employee be a resident of this State, and this involves no unconstitutional discrimination. See annotations to *Broderick v. Rosner,* 249 U. S. 629, 55 S. Ct., 589, 79 L. Ed. 1100, 100 A. L. R. 1133, 1148.

"We have before us no question as to the policy of the court, and not even a question as to the ultimate rights of the parties. We are only considering the jurisdiction of the Commission under the act creating it and the subject matter to which it is sought to apply that jurisdiction,—whether it complies fully with the condition upon which the jurisdiction attaches."

In the latter case the employer and carrier (evidently then under a misappaehension as to the law) after the accident had entered into an agreement of compensation with the employee, which was approved by the Industrial Commission and payments were made thereunder, but the Court held even that did not constitute waiver or estoppel by which jurisdiction of the subject-matter could be conferred upon the Industrial Commission, which jurisdiction it did not have by virtue of the statute. The latter makes this case a very strong authority against appellants' first position also, dissposed of hereinabove.

Another decision of a state Court of high repute is *Liggett & Myers Tobacco Co. v. Goslin,* 163 Md., 74, 160 A., 804, 807, where the question was the same. Jurisdiction of extraterritorial accidents was conferred by the statute upon the Industrial Commission when the injured employee was a citizen or resident of Maryland. The controversy arose concerning an injury received in Delaware and it was contended, as here, that the provision was an unconstitutional discrimination against the injured employee who was not a citizen of Maryland, but the Court held otherwise and said in part as follows:

"Discrimination implies the deprivation of some right, privilege or immunity which injures one entitled thereto, but it is not easy to see how this act discriminates against any one in that sense. Employers who maintain a place of business in the state are expressly within its terms, if they have no such place there is no reason why they cannot bring themselves within its terms if they so desire by complying with that requirement. Employees employed beyond the state * * * and who do not reside therein, are not injured by the act, since it does not and could not apply to them at all, and since the state as an incident of its sovereignty is burdened with the care of its own citizens and as well the citizens of other states who may be residing therein when by casualty, disease, or poverty they cannot care for themselves,

the classification rests upon a sound and reasonable foundation.

"A different result was reached in the case of *Quong Ham Wah Co. v. Industrial Accident Company*, 184 Cal., 26, 192 P., 1021, 12 A. L. R., 1190, by construing the word 'resident' as meaning 'citizen', and holding that a provision which restricted the jurisdiction of the commission to controversies arising out of injuries suffered beyond the state in cases where the injured employee was a resident of the state and the contract of employment was made within the state, was an unlawful discrimination against the citizens of other states. No authority in point was cited in support of that opinion, which is criticized in 12 A. L. R., 1207, note, and we are unable to accept the reasoning upon which the conclusion of the court was based. It is not every discrimination made by a state in favor of its own residents that is obnoxious to the constitutional provision, but on the contrary the right of the states to make such discrimination where there is a sound and reasonable basis for it has been repeatedly sustained. For instance, such discrimination has been recognized as valid in statutes regulating the practice of law. *Keeley v. Evans*, D. C., 271 F., 520, appeal dismissed, 257 U. S., 667, 42 S. Ct., 184, 66 L. Ed., 426, the right to vote or hold office, *Ward v. Morris & Nicholson*, 4 Har. & McH., 330, 340, the right to hunt and fish, *In re Eberle*, C. C., 98 F., 295, the issuance of attachments, *Campbell v. Morris*, 3 Har. & McH., 535, requiring nonresidents to give security for costs, *Haney v. Marshall*, 9 Md., 194, and limiting the right to sell intoxicating liquor to residents. *DeGrazier v. Stephens*, 101 Tex., 194, 105 S. W., 992, 16 L. R. A., N. S., 1033, 16 Ann. Cas., 1059, as not infringing the right of the citizens of each state to the full enjoyment of the privileges and immunities of citizens of the several states."

Counsel for appellants in argument rely heavily upon the famous decision of the Federal Supreme Court in *Blake v.*

*McClung,* 172 U. S., 239, 19 S. Ct., 165, 172, 43 L. Ed., 432, in which it was held that a state cannot constitutionally discriminate in favor of resident creditors of an insolvent against nonresidents, an authority which is not now pertinent, but the following quotation from the opinion is not out of place: "We must not be understood as saying that a citizen of one state is entitled to enjoy in another state *every* privilege that may be given in the latter to its own citizens. There are privileges that may be accorded by a state to its own people, in which citizens of other states may not participate, except in conformity to such reasonable regulations as may be established by the state. For instance, a state cannot forbid citizens of other states from suing in its courts, that right being enjoyed by its own people; but it may require a nonresident, although a citizen of another state, to give bond for costs, although such bond be not required of a resident. Such a regulation of the internal affairs of a state cannot reasonably be characterized as hostile to the fundamental rights of citizens of other states. So, a state may, by rule uniform in its operation as to citizens of the several states, require residence within its limits for a given time before a citizen of another state, who becomes a resident thereof, shall exercise the right of suffrage or become eligible to office. It has never been supposed that regulations of that character materially interfered with the enjoyment by citizens of each state of the privileges and immunities secured by the constitution to citizens of the several states. *The constitution forbids only such legislation affecting citizens of the respective states as will substantially or practically put a citizen of one state in a condition of alienage when he is within or when he removes to another state, or when asserting in another state the rights that commonly appertain to those who are part of the political community known as the People of the United States, by and for whom the government of the Union was ordained and established.*" (Emphasis added.)

In 71 C. J., 497, Workmen's Compensation Acts, Section 220, Paragraph 11, is found the following: "In the absence of a statutory provision the effect of which is otherwise, an employee, in order to be entitled to the benefits of a compensation act, is not required to be a resident of the state." Which impliedly says that in the presence of such statutory provision, an employee must be a resident of the state in order to be entitled to benefits, without the author expressing any fault or defect in such a statutory provision which latter is not uncommon in compensation laws, as we have seen.

In the footnote to the following excerpt from the text found in 12 Am. Jur., 102, Constitutional Law, Section 454, is cited *Douglas v. New York, N. H. & H. R. Co., infra,* which will be later again referred to: "A citizenship and residence in a state are not necessarily synonymous, for although the Fourteenth Amendment specifically says that United States citizens are citizens of the state in which they reside, there may be a temporary residence in one state, with intent to return to another, which will not create citizenship in the former. It has been held in some instances that a statute which makes discriminations and distinctions against nonresidents by permitting only residents to engage in certain occupations or by granting certain privileges only to residents does not violate the privileges and immunities of citizens of other states or United States citizens, provided the statute has been construed to include within the class of residents, not only citizens of the state, but also such citizens of other states who happen to be residents of the state. In a recent case the Supreme Court has stated quite broadly that a statute conferring privileges may validly discriminate between residents and nonresidents where the distinction is based on rational considerations."

The provision under review has nothing to do with citizenship, does not purport to and does not actually. A citizen of another state might well reside here and come within the

law, or a citizen of this State be a nonresident and fall without it, as did Henry Grady Smith (who was apparently a citizen of Georgia, certainly a resident there) in the case of his extra-territorial accident. This proposition is, we think, amply sustained by the authorities. Despite the already unusual length of this opinion, a few more will be cited. The earnestness of counsel. requires a rather full discussion.

The opinion of this Court in *Cummings v. Wingo,* 31 S. C., 427, 10 S. E., 107, 110, in which the validity of the State statute requiring nonresidents to make a costs deposit for maintenance of lawsuits was upheld, was written by that able jurist, then Associate Justice McIver, afterward Chief Justice of this Court, from which we quote:

"Now, the provisions of our statute and rule of court make no discrimination against *citizens* of another state, *as such.* They do not deny to the citizens of another state the right to maintain an action in the courts of this state upon the same terms as a citizen of this state may do, because he is a citizen of another state. The provisions relate only to *residence,* and not to citizenship, which are entirely different things. As was said by Mr. Justice Grier in *Parker v. Overman,* 18 How., 137 [15 L. Ed., 318] : 'Citizenship and residence are not synonymous terms,'—or as was said by Mr. Justice Harlan in *Robertson v. Cease,* 97 U. S. [646] 648 [27 L. Ed., 1057] : 'Citizenship and residence, as often declared by this court, are not synonymous terms.' To same effect, see *Grace v. American Ins. Co.,* 109 U. S., 278, 3 S. Ct., 207 [27 L. Ed., 932], and *Menard v. Goggan,* 121 U. S., 253, 7 S. Ct., 873 [30 L. Ed., 914].

"Having thus shown that citizenship and residence are regarded by the tribunal of last resort, in all questions involving the construction of the constitution of the United States, as distinct and different things, it does not seem to us that the provisions of our statute and rule of court in respect to the requirement of security for costs in certain cases

are in conflict with the clause of the constitution above quoted. The security for costs is required of a party, not because he is a citizen of another state, but only because he is a nonresident of this state. The requirement would apply as well to a citizen of this state, who was a non-resident at the time, as it would to a citizen of another state not residing here; and so, on the other hand, if a citizen of another state is residing here at the time, he could no more be required to enter security for costs than a citizen of this state under like circumstances."

To the same general effect is *Central R. & Banking Co. v. Georgia Construction & Investment Co.*, 32 S. C., 319, 11 S. E., 192, where it was held, quoting Syllabi 1 and 4:

"An action may be brought in the Circuit Courts of this State 'against a corporation created by or under the laws of any other State, government, or country,' by a resident of this State for any cause of action, but by a non-resident only when the cause of action shall have arisen in this State, or when the subject of the action is situated within this State."

"The privileges and immunities secured to the citizens of other States by the Constitution of the United States, do not require this State to extend to non-residents the same unlimited right of suit against foreign corporations as is accorded to residents of the State."

A later case from this Court was *La Tourette v. McMaster*, 104 S. C., 501, 89 S. E., 398, in which the State requirement that insurance agents must be residents of the State was held valid, and the decision was affirmed by the Supreme Court of the United States, 248 U. S., 465, 30 S. Ct., 160, 63 L. Ed., 362, wherein it was pointed out that the State Court distinguished between citizenship and residence and thereby avoided discrimination, as we similarly and, we think, properly do in the instant case, and held that since the statute there under attack applied as well to citizens of South Carolina as to citizens of other states, the requirement was permissible, residence and citizenship

being different things. Afterward (1929) that same high Court in an opinion by Justice Holmes in *Douglas v. New York, N. H. & H. R. Co.,* 279 U. S., 377, 49 S. Ct., 355, 356, 73 L. Ed., 747 (mentioned hereinabove) upheld the discrimination of the New York statute against actions in the Courts of that state by nonresidents against foreign corporations, and said: "Construed as it has been and we believe will be construed the statute applies to citizens of New York as well as to others and puts them on the same footing. There is no discrimination between citizens as such, and none between nonresidents with regard to these foreign causes of action. A distinction of privileges according to residence may be based upon rational considerations and has been upheld by this Court, emphasizing the difference between citizenship and residence, in *La Tourette v. McMaster,* 248 U. S., 465, 39 S. Ct., 160, 63 L. Ed., 362. Followed in *Maxwell v. Bugbee,* 250 U. S., 525, 539, 40 S. Ct., 2, 63 L. Ed., 1124. It is true that in *Blake v. McClung,* 172 U. S., 239, 247, 19 S. Ct., 165, 43 L. Ed., 432, 'residents' was taken to mean citizens in a Tennessee statute of a wholly different scope, but whatever else may be said of the argument in that opinion (compare page 262 [of] 172 U. S., 19 S. Ct. [at page] 165 [43 L. Ed., 432]), it cannot prevail over the later decision in *La Tourette v. McMaster,* and the plain intimations of the New York cases to which we have referred. There are manifest reasons for preferring residents in access to often overcrowded Courts, both in convenience and in the fact that broadly speaking it is they who pay for maintaining the Courts concerned."

Misunderstanding has arisen by considering the provision of law under attack as a denial to nonresidents of rights accorded residents; rather it is a provision for residents of the beneficent protection of the workmen's compensation law in their activities beyond the borders of the State resulting from their employment within the State,

provided they do not contract for entire employment abroad. To great extent the whole scheme of workmen's compensation is to place the economic burden of industrial accidents upon industry rather than upon the workers and their dependents, and as to the latter thereby rendered indigent, upon the State, 71 C. J., 247. This *raison d'etre* does not usually exist as to nonresidents of the State.

In reaching the conclusion indicated we have not been unmindful of the tenet of interpretation that the overall intention of the compensation law is the inclusion of employees, not their exclusion (*Ham v. Mullins Lumber Co., supra,* and *Yeomans v. Anheuser-Busch,* also *supra*) ; but the legislature has by the enactment of Section 36 (1942 Code, Section 7035-39) too clearly and expressly excluded nonresidents involved in "foreign" accidents to admit of doubt of the intention of the law in this particular. And the exclusion is reasonable in view of the principal purpose of the law, above alluded to, and also of the difficulties of its administration in the case of "foreign" accidents, with claimants and witnesses beyond the jurisdiction, etc.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and FISHBURNE, and CIRCUIT JUDGE WM. H. GRIMBALL, ACTING ASSOCIATE JUSTICE, concur.