18093

D. B. BRIDGES and American Guarantee and Liability Insurance Company, Appellants v. WYANDOTTE WORSTED COMPANY, Respondent.

(182 S. E. (2d) 18)

2

*Messrs. Leatherwood, Walker, Todd & Mann,* of Green-
ville, *for Appellants,*

*Messrs. Haynsworth, Perry, Bryant, Marion & Johnstone,*
of Greenville, *for Respondent,*

July 8, 1963.

LEWIS, Justice.

This action was instituted in the Court of Common Pleas against the defendant Wyandotte Worsted Company to recover damages sustained by the plaintiff Bridges from an electrical shock received while engaged, as an employee of P. E. Collins Electric Company, in the replacement of an electric transmission line of the defendant at its plant in Greenville County. Collins Electric Company had contracted with the defendant to do the work and the plaintiff Bridges was a member of the crew assigned by Collins to do the job. This appeal is by the plaintiff from an order of the lower court dismissing the action upon the ground that the court was without jurisdiction of the cause and that plaintiff's claim was within the exclusive jurisdiction of the South Carolina Industrial Commission, because the work being performed by the subcontractor Collins, the plaintiff's employer, was a part of the trade, business or occupation of the defendant, within the meaning of the Workmen's Compensation Law. The basic issues to be decided in this appeal concern whether or not the lower court properly determined the foregoing jurisdictional question. This case was before us on a prior appeal involving a question of parties. 239 S. C. 37, 121 S. E. (2d) 300.

The defendant Wyandotte Worsted Company is a manufacturer of textile woolen goods and opeartes a plant at Conestee, in Greenville County, South Carolina. Its employees are covered under the Workmen's Compensation Law. It owned and operated its own hydro-electric system, from which it derived a portion of the electricity used in the operation of its plant. The balance of its needed electricity was purchased from Duke Power Company. The electricity purchased from Duke was received at the defendant's property line and brought to its plant over a transmission line owned and maintained by the defendant. The electricity generated by the defendant's hydro-electric plant and that purchased from Duke was brought into the plant of the defendant at a central point

where it was reduced by the defendant's electrical system from a voltage of 550 to 220 or 110 as required and then distributed over the wiring system of the defendant to the machinery in the mill. The defendant's complete electrical system, including the transmission lines from its property line to the plant, was owned and maintained by it. The defendant regularly employed a crew of men who maintained the electrical system, two of whom were experienced and competent electricians in the handling of electrical work on energized, or so-called "hot" electrical lines.

In June, 1960, due to an increase in the amount of machinery in the plant of the defendant, a three-phase transmission line of the defendant, over which electricity was brought into the plant from Duke Power Company, became overloaded. This overload made it necessary to replace it with a heavier duty line. The work on the line had to be done on a Sunday when the defendant's machinery was not operating. The defendant's crew had on a prior occasion done similar work on this line and maintained it, but, due to the excessive amount of overtime that its men had already worked, the defendant felt that they should have a rest on the particular Sunday selected to replace the line and, therefore, contracted with P. E. Collins Electric Company, an electrical contractor, to do the work. The record shows that in the performance of this work Collins occupied the status of an independent contractor. Collins had on two prior occasions been called in by the defendant to do electrical work at its plant.

The plaintiff Bridges was an employee of Collins Electric Company and a member of the crew assigned by Collins to replace the above mentioned transmission line at the plant of the defendant. While so engaged on Sunday, June 19, 1960, the plaintiff sustained injuries from electrical shock when he came into contact with an energized electric line.

Collins Electric Company, by whom plaintiff Bridges was employed, was operating under the South Carolina Workmen's Compensation Law and Bridges was paid benefits to

which he was entitled under such law by the American Guarantee and Liability Company, the Workmen's Compenation carrier of Collins Electric Company.

This action was subsequently instituted by the plaintiff Bridges against the defendant to recover for his injuries, alleging that they resulted from the negligent and reckless acts of an employee of the defendant in turning on the electricity and re-energizing the lines upon which he was working. Since the American Guarantee and Liability Insurance Company paid Workmen's Compensation benefits to the plaintiff Bridges, it was subrogated to Bridges' claim against the defendant to the extent of such payments, and was, therefore, joined as a co-plaintiff in this action.

Among other defenses, the answer of the defendant alleged that the Court of Common Pleas was without jurisdiction to entertain this common law action for tort against the defendant Wyandotte Worsted Company, since Wyandotte was operating under the provisions of the South Carolina Workmen's Compensation Law, and Collins Electric Company, the employer of Bridges, was at the time Bridges received his injuries, engaged in the performance of work which was a part of the defendant's trade, business or occupation within the meaning of the Workmen's Compensation Act, particularly Section 72-111 of the 1962 Code of Laws, which is as follows:

"When any person, in this section and §§ 72-113 and 72-114 referred to as 'owner,' undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 72-113 to 72-116 referred to as 'subcontractor') for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him."

. Upon the trial of the case and at the conclusion of the testimony, the trial judge sustained the foregoing defense and granted defendant's motion for a directed verdict in its favor, holding that the court was without jurisdiction to entertain the present common law action for tort against the defendant, in that the work in which the subcontractor Collins Electric Company, the employer of the plaintiff Bridges, was engaged at the time was a part of the defendant's trade, business or occupation and, therefore, under the provisions of the Workmen's Compensation Act the plaintiff's claim was within the exclusive jurisdiction of the South Carolina Industrial Commission. The plaintiff has appealed from the foregoing ruling of the lower court.

In holding that the court had no jurisdiction to entertain the present common law action for damages, because the plaintiff's employment came within the coverage afforded by the Workmen's Compensation Act, the trial judge withdrew the case from the jury and determined all issues, both of law and fact, relating to jurisdiction. The first question to be decided arises under the exception of the plaintiff, which charges error on the part of the lower court in deciding the factual issues relating to jurisdiction and in not submitting such to the jury for determination. .

When the trial judge decided all issues relating to jurisdiction in this case, he followed the rule approved by this Court. For "[i]t has been consistently held that whether the claim of an injured workman is within the jurisdiction of the Industrial Commission is a matter of law for decision by the court, which includes the finding of the facts which relate to jurisdiction." *Adams v. Davison-Paxon Co.*, 230 S. C. 532, 96 S. E. (2d) 566; *Knight v. Shepherd*, 191 S. C. 452, 4 S. E. (2d) 906; *Tedars v. Savannah River Veneer Company*, 202 S. C. 363, 25 S. E. (2d) 235, 147 A. L. R. 914; *McDowell v. Stilley Plywood Co.*, 210 S. C. 173, 41 S. E. (2d) 872; *Miles v. West Virginia Pulp & Paper Co.*, 212 S. C. 424, 48 S. E. (2d) 26; *Watson v. Wannamaker & Wells, Inc.*, 212 S. C. 506, 48 S. E. (2d) 447; *Gordon v.*

*Hollywood-Beaufort Package Corp.,* 213 S. C. 438, 49 S. E. (2d) 718; *Holland v. Georgia Hardwood Lbr. Co.,* 214 S. C. 195, 51 S. E. (2d) 744; *Younginer v. J. A. Jones Const. Co.,* 215 S. C. 135, 54 S. E. (2d) 545; *Horton v. Baruch,* 217 S. C. 48, 59 S. E. (2d) 545; *Brown v. Moorhead Oil Co.,* 239 S. C. 604, 124 S. E. (2d) 47; *Pyett v. Marsh Plywood Corp.,* 240 S. C. 56, 124 S. E. (2d) 617; *Allen v. Phinney Oil Co.,* 241 S. C. 173, 127 S. E. (2d) 448.

The plaintiff does not, however, question the fact that the lower court followed the law in deciding the jurisdictional question, including the factual issues necessary to such determination, but says that the law is wrong and the rule stated in *Adams v. Davison-Paxon,* and consistently followed by this Court, should be overruled. Permission was granted to argue against further adherence to the rule.

The plaintiff takes the position that, when the court withdrew from the consideration of the jury the factual issue of whether the work being done by the plaintiff was a part of the general business of the defendant, he was deprived of his right to have the jury pass upon the disputed issues of fact. We think that the rule stated in *Adams v. Davison-Paxon* is sound and we adhere to it.

The rule in *Adams v. Davison-Paxon* is not peculiar to issues concerning jurisdiction in Workmen's Compensation cases. Jurisdictional questions arising under motions to dismiss the service of pleadings on supposed agents of foreign corporations have been held to present issues for determination by the court and not a jury. *Bargesser v. Coleman Co.,* 230 S. C. 562, 96 S. E. (2d) 825. The rule is based upon the principle that "[e]very court has the power and duty to determine whether or not it has jurisdiction of a cause presented to it for determination," which includes the power "to decide all questions, whether of law or fact, the decision of which is necessary to determine the question of jurisdiction." 21 C. J. S. Courts § 113, p. 174; 14 Am. Jur. 368, Section 168.

The issue of jurisdiction is basically one of law. It involves the determination by the court of its right to proceed with litigation. A decision of this question by the court deprives a litigant of no right to a jury trial of the issue of liability because, if the court has no jurisdiction, the litigants have no rights which they may assert in that court. The right to have a jury pass upon the controverted factual issues must of necessity relate to the assertion of the right of the litigant which has been allegedly violated; which presupposes a court having jurisdiction to grant the relief sought. The determination of the jurisdictional question by the court is not a denial of any constitutional right of a litigant to a jury trial, but simply a determination of the forum in which those rights may properly be asserted. The decision of the question of whether the court has jurisdiction is a preliminary one to the determination of the merits of the cause, and is for the court to decide.

The plaintiff argues, however, that the question raised by the defendant as to the applicability of the Workmen's Compensation Act is not one of lack of jurisdiction in the court but a want of a cause of action in the plaintiff. It is then contended that, since the issue is one of a want of a cause of action in the plaintiff, the merits of the cause are involved, entitling the plaintiff to a jury trial of the factual issues. Contrary to the position of the plaintiff, the decisions of this Court, cited hereinabove, consistently hold that the question of the applicability of the Workmen's Compensation Act is one involving the jurisdiction of the court.

The decision in *Googe v. Speaks,* 194 S. C. 206, 9 S. E. (2d) 439, relied upon by the plaintiff, is not inconsistent with the above cited cases. The defense that the claim of the plaintiff was within the exclusive jurisdiction of the Industrial Commission was not plead in the answer of the defendant in the *Googe* case, and the court held that the application of the Workmen's Compensation Act was not an issue in the case because not set up by way of the special defense. The *Googe* case simply held that the manner of raising the ques-

tion of the applicability of the Workmen's Compensation Act is procedural and must be raised by plea. If the Act applies, the court has no jurisdiction. The defendant has plead the Workmen's Compensation Act in its answer and the question is properly presented, under the *Googe* case, as to whether or not the employment of the plaintiff Bridges was covered by the terms of the Act, that is whether or not the Industrial Commission has exclusive jurisdiction of the plaintiff's claim.

The plaintiff also cites the case of *Byrd v. Blue Ridge Rural Electric Cooperative*, 356 U. S. 525, 78 S. Ct. 893, 2 L. Ed. 953 in support of his contention that we should over-rule the principle stated in *Adams v. Davison-Paxon.* In the *Byrd* decision, it was apparently held that in Federal diversity cases jurisdictional factual issues should be submitted to the jury for determination. In reaching its decision, the United States Supreme Court recognized the rule in South Carolina as expressed in *Adams v. Davison-Paxon,* but concluded that it was not required to follow our decisions upon the question. The plaintiff concedes that the *Byrd* case is not binding authority here, and we do not consider it persuasive.

The duty and the responsibilty clearly rested upon the trial judge to determine all issues involved in a decision of the jurisdictional question raised in the answer of the defendant, and he committed no error in so doing.

The plaintiff next contends that the lower court erred in concluding under the evidence that the work contracted to be done by plaintiff's employer was a part of the trade, business or occupation of the defendant within the meaning of Section 72-111, supra.

In determining whether an employee falls within the coverage afforded by Section 72-111, the basic test is whether or not the work being done is a part of the general trade, business or occupation of the owner. Once it is established that the work being done by the subcontractor was a part of the general business of the owner within the meaning of Section 72-111, even though the subcontractor might occupy

the status of an independent contractor, the employees of the subcontractor so engaged are limited under Section 72-121 of the 1962 Code of Laws to the exclusive remedy of the Workmen's Compensation Laws. *Marchbanks v. Duke Power Co.,* 190 S. C. 336, 2 S. E. (2d) 825; *Adams v. Davison-Paxon Co., supra,* 230 S. C. 532, 96 S. E. (2d) 566, and cases therein cited; *Bell v. South Carolina Electric and Gas Co.,* 234 S. C. 577, 109 S. E. (2d) 441.

Due to the many different factual situations which arise, no easily applied formula can be laid down for the determination of whether or not the work in a given case is a part of the general trade, business or occupation of the principal employer. Each case must be determined on its own facts. *Marchbanks v. Duke Power Co., supra,* 190 S. C. 336, 2 S. E. (2d) 825.

It is especially difficult to lay down any hard and fast rule with regard to such activities as repair and maintenance. The practices of different concerns operating in the same field often vary. For example, activities which would be unusual and out of the ordinary in a small business might be a normal activity for a large concern. As stated by Mr. Larson in Section 49.12, page 726, of his work on Workmen's Compensation Law, "the test must be relative, not absolute, since a job of construction or repair which would be a non-recurring and extraordinary undertaking for a small business might well for a large plant be routine activity which it normally expects to cope with through its own staff." Therefore, it is generally recognized that a statute, such as here under consideration, includes work or activities usually or customarily performed by the owner or principal employer in carrying on the general trade or business. 99 C. J. S. Workmen's Compensation § 109b; Larson's Workmen's Compensation Law, Section 49.12.

In the present case, the defendant was engaged in the manufacture of woolen goods. Its machinery was operated by electricity derived in part from its own hydro-electric plant

and in part by purchase from Duke Power Company. The work here involved was the repair or replacement of the transmission line owned by the defendant and located on its property, over which electric current, necessary for the operation of its business, was brought into its plant from Duke Power Company. These lines had been replaced on a previous occasion, and customarily maintained, by a qualified crew regularly employed by the defendant. Because the regular employees of the defendant had been overworked and needed rest, the defendant contracted with Collins Electric Company, plaintiff's employer, to make the needed replacements on its transmission lines. The replacement of the lines was made necessary by an overload placed upon them by the addition of machinery in defendant's mill. It is reasonably inferable from the record that the work of replacing the transmission lines in question was not an unusual or extraordinary undertaking, but one customarily done by defendant's employees who were maintained for such purposes. The maintenance and repair of its electrical system was, therefore, made a part of the work done by the defendant in the prosecution of its business of manufacturing woolen goods.

We think that the record clearly sustains the conclusion that the repair or replacement of the electric transmission lines of the defendant by the subcontractor Collins Electric Company, the employer of the plaintiff Bridges, was a part of the work ordinarily and customarily performed by the employees of the defendant in the prosecution of the defendant's business. As such, it was a part of the trade, business or occupation of the defendant within the meaning of Section 72-111, *supra*. Therefore, the lower court properly held, under the facts of this case, that the employment of the plaintiff was covered under the terms of the Workmen's Compensation Act and that he was accordingly confined to the exclusive remedy therein provided.

The last question to be decided relates to the refusal of the trial judge to permit the plaintiff to introduce certain testimony in reply. After the defendant had

concluded its testimony, the plaintiff sought to prove that Collins Electric Company had been called in by the defendant to do electrical work on several occasions, both before and after June 19, 1960, the date of plaintiff's injury. The trial judge permitted testimony that Collins Electric Company had done two electrical jobs for the defendant prior to the date of plaintiff's injury, one in May, 1960 and the other in June, 1960, but refused to admit testimony that Collins had done six electrical jobs for the defendant after plaintiff's injury, five in 1960 and one in 1962. The excluded testimony was offered for the purpose of showing that the work being done by Collins at the time of plaintiff's injury was not a part of the business of the defendant. The plaintiff apparently sought to draw the inference that, since the defendant called in Collins on the occasions in question to do electrical work at its plant, it was not customary for such work to be done by the defendant's employees and that Collins was called in because the defendant was not prepared to handle that particular electrical work.

The record fails to show any abuse of discretion in the exclusion of the foregoing testimony. It is well settled that the admission of evidence is largely within the discretion of the trial judge, and this is especially true with reference to the admission of evidence in reply.

The excluded testimony shows that Collins Electric Company was employed to do electrical work for the defendant on only six occasions over a period of approximately two and one half years after the plaintiff's injury and only twice before. The particular nature of the electrical work done after the injury or the circumstances which brought about its performance by Collins do not appear. The irregularity and infrequency of the work done by Collins made it, in the absence of other showing, and in the light of the record, improbable that the defendant relied upon Collins for maintenance of its electrical system rather than defendant's own employees. Therefore, assuming that the testimony was otherwise admissible, it was without probative value in

determining the issue of whether the work being done by Collins at the time of plaintiff's injury was a part of the business of the defendant, and inadmissible on that ground.

Affirmed.

TAYLOR, C. J., and Moss, BUSSEY and BRAILSFORD, JJ., concur.