LEVY'S LADIES TOGGERY, INC., *v.* BRYANT.

(*Nashville,* December Term, 1945.)

Opinion filed March 2, 1946.

ROSENFIELD & BOROD, of Memphis, and ARMISTEAD, WALLER, DAVIS & LANSDEN and ELKIN GARFINKLE, all of Nashville, for complainant.

HAMMOND FOWLER, of Rockwood, and W. L. MOORE, of Nashville, for defendant Bryant. A. G. EWING, of Nashville prepared case in Lower Court.

MR. JUSTICE NEIL delivered the opinion of the Court.

The complainant, who is engaged in the ladies' ready-to-wear business in Memphis, filed its original bill in the Chancery Court at Nashville to recover $612.74, which it had paid under protest to the Commissioner of Labor as a tax assessed under the Unemployment Compensation Law of Tennessee. The bill alleges that complainant had paid all lawful assessments assessed against it.

The amount of money herein specified represents taxes paid on the employees of one Samuel G. Hiller for the years 1936 up to 1944. The bill recites in detail the relationship between the complainant and the said Hiller, it being alleged that the complainant leased to him a portion of its storehouse on the third floor for the carrying on of a boys' and young men's ready-to-wear shop; that this business was owned by the said Hiller and all his

employees were paid by him and were subject to his orders; that he paid the social security tax on said employees, the number varying but never exceeding five; that the said Hiller·was not liable for the unemployment compensation tax. It is further alleged that the merchandise belonged to Hiller and was sold by him at such prices as he desired; that the lease provided that Hiller and his employees were subject to the rules and regulations established by complainant for the operation of its own business because of· the "peculiar relationship between the parties." . The complainant received as rental a percentage of the sales made by Hiller at said storehouse, but it is claimed that the business of complainant and that of the said Samuel G. Hiller were separate and distinct.

The defendant commissioner filed a formal answer to the bill and insisted that under the Tennessee law the complainant was subject to the tax. There is very little dispute between the parties as to the facts. The only question made on the record is whether or not the complainant is liable.

The chancellor found the pertinent facts, based upon the testimony of Samuel G. Hiller and Eugene L. Lerner, secretary and general counsel of Levy's Ladies Toggery, and the lease signed by the parties, and sustained the defendant's contention, with the result that a decree was entered dismissing the bill.

From this decree the complainant appealed and has assigned the following errors, to-wit, (1) the court erred in rendering judgment for the defendant and in dismissing complainant's bill; (2) the court erred in not rendering judgment in favor of the complainant for $649.75 and interest from November 2, 1944.

The chancellor in his opinion stated briefly but clearly the respective contentions of the parties as follows:

"Complainant insists that the department in question operated by Samuel G. Hiller, is a separate and distinct business from that of the complainant, and that there is, therefore, no liability on complainant for the taxes in question.

"Defendant, on the other hand, insists that under Sec. 19(e) of the Unemployment Compensation Law (Code, Sec. 6901-19(e), the tax was properly assessed, and that complainant is liable for its payment."

In giving consideration to these respective contentions we must look to the record to determine the manner in which the said Hiller operates his "leased department" on the third floor in the storehouse of the complainant. The best evidence of the relationship between Hiller and the complainant is the written lease which is filed as an exhibit to the defendant's answer. In said lease the complainant is called the "Licensor" and Samuel G. Hiller the "Licensee". It provides for leasing a space in complainant's store to the said Hiller for operating a boys' clothing department. The Chancellor found from the said lease contract the following:

"Looking to the lease contract between complainant and Samuel G. Hiller, we find that the complainant corporation does not part with control over the operation of the boys ready-to-wear department, nor does it part with control over the employees of that department.

"In Section 3 and 4, page 2 of the lease agreement (Exhibit to the answer), we see that the licensee is to use and occupy 'the space now occupied by licensee on the third floor of the premises . . .,' and . . . 'to continue to use the store fixtures now in said boys' department belonging to licensor, and being used by licensee.'

"The contract also provides for furnishing without expense to the licensee of electric lights, heat, elevator service, a cashier, wrapping desk and service, including paper and twine; janitor and porter service, telephone service, water, towels, duplicate sales books, boxes and delivery service. (See Sec. 6, p. 2, Exhibit to Answer.)

"Under Sec. 7 of the contract the licensor is to accept advertising matter from the licensee to be included in the licensor's general advertising program, to be paid pro rata.

"Under Sec. 8 the licensor receives all the cash and receipts from sales, keeps the books and records, and accounts to the licensee for his percentage, at stated periods.

"Under Sec. 8 of the contract it is provided as follows: 'It is understood that the licensor shall pay for the Licensee's account all local expense such as salaries, advertising, insurance, etc., upon presentation of statements therefor approved in writing by Licensee. However, the Licensor shall not be required to pay any item of expense which would, or might, jeopardize Licensor's percentage of gross sales as hereinafter mentioned, and should such event occur, Licensor shall have the right to require of the Licensee sufficient money to meet said expense.'

"Under paragraph 'D' on page four (exhibit to answer) it is provided as follows: 'D—Employers: To employ at all times a sufficient number of competent sales persons to efficiently and properly wait upon and serve customers; provided, however, that none of these employed shall in anywise be objectionable to the said Licensor, and to discharge for cause any employee in the said boys' department on the request of the said Licensor, stating the cause for which such discharge is requested.'

"Paragraph 'E' on page four, provides that the licensee shall, at all times, operate his department in conformity with the general policy of the licensor's business, observing all reasonable rules and regulations not inconsistent with the provisions of the lease.

"Section 'F', on the same page, provides that the hours of work must conform in all respects to those fixed by the licensor, for the conduct of its business.

"Section 'G' on page 5, provides that licensee may sell on credit only to such person or persons and on such terms as the licensor shall approve, although the licensee may sell on credit without approval, if he guarantees in writing the payment to the licensor.

"Section 'J', page 5 of the contract, provides that all goods in the department must be sold in the name of the licensor, and that no advertising may be done by the licensee in his own name, and that the licensee may 'not erect or permit any sign to be exhibited in any part of said premises which shall display the name of the licensee; that all business transacted shall be carried on and conducted ostensibly and apparently by the said licensor, shall be so represented to all persons (save and except to those from whom the Licensee purchases merchandise), and the public generally; to advertise his said business in the name of the Licensor, but the cost thereof shall be borne by Licensee exclusively. All clothing and furnishings are to contain the name of the Licensor, wherever possible, and no other name, except the manufacturer's may be shown on any garment sold by Licensee.'

"Section 'L' page 5 provides that the Licensee must pay his own taxes.

"Section 'P', page 6, provides that the Licensor shall furnish licenses, stenographic service, and Licensee has the right to insert advertising matter in the monthly statements of Licensor, and in correspondence suitable for such purpose.

"Under Sec. 3, page 7, it is agreed that in the event of any dispute or controversy between a customer and licensee, same shall be referred to a proper officer of licensor, who shall have the right to settle same with the customer, and if necessary to accept on behalf and for the account of the licensee, the return of any merchandise from any dissatisfied customer.

"Therefore, it is hard for the court to escape the conclusion that the aforesaid contract amounts to little more than a convenient arrangement between the parties, for. the operation of a department of Levy's Store, with essential and substantial control still held by complainant corporation, but which arrangement, in addition to providing for a convenient method of the operation of a department, provides also a means of avoiding or reducing taxes."

■ We are in accord with the complainant's insistence that the law here invoked is a "taxing statute and must be strictly construed against the taxing authority."

■ Both in oral argument and on the brief, counsel for the complainant says that it is not the "Employing Unit" under Section 6901.19(e) of the Code; that its business and that of Hiller is separate and distinct; that the chancellor was in error in holding that, under the aforesaid code section and the facts, the employees of Hiller were employees of complainant according to the provisions of the statute. We think there is ample evidence to justify us in holding that the chancellor did not arbitrarily find as a fact that complainant was the "Employ-

ing Unit'' according to the statute. The lease itself, when read in the light of all attendant circumstances, supports the chancellor's opinion.

The question involved in the present controversy is determined by the construction to be placed upon ''Employing Unit.'' The term is clearly and fully defined in Code section 6901.19(e), above referred to, and related sections. The defendant strongly relies upon the following, which is a part of the above-mentioned code section: ''Whenever any employing unit contracts with or has under it any contractor or subcontractor for any work which is part of its usual trade, occupation, profession, or business, unless the employing unit as well as each such contractor or subcontractor is an employer by reason of Section 6901.19(f) or Section 6901.8(c) of this Chapter, the employing unit shall for all the purposes of this chapter be deemed to employ each individual in the employ of each such contractor or subcontractor . . .''

When we apply this express provision of the statute to the Chancellor's finding of fact, his conclusion, to which we have made reference, is well nigh inescapable—that is, that the complainant retained ''substantial control'' of the corporation, and in addition the arrangement provided ''a means of avoiding and reducing taxes.'' If, as we hold, the foregoing is not an arbitrary ruling but based upon material evidence, then the complainant has been properly adjudged the ''Employing Unit'' and liable for the tax.

The complainant's counsel have cited *Wolfe* v. *Bryant*, 181 Tenn. 357, 181 S. W. (2d) 343, and *Guaranty Mortgage Co., etc.,* v. *Bryant,* 179 Tenn. 579, 168 S. W. (2d) 182, and other cases, as supporting the insistence that Samuel G. Hiller was conducting a separate and independent business from the complainant. The facts of

these cases may be easily distinguihsed from the finding of the chancellor in the instant case. In the *Wolfe case* the chancellor found that, while Olswing did the alteration work for Wolfe at a fixed price per garment, it was an independent business. In the instant case the same chancellor found the contrary to be true. We are satisfied from the provisions of the lease that the complainant had it in its power (whether it exercised it or not is immaterial) to direct the entire business of the licensee Samuel G. Hiller. In the *Guaranty Mortgage Company case* the real estate salesmen were "independent operators," as found by the Court. The case is thus easily distinguished from the facts as found by the chancellor in the instant case.

 It was not necessary for the Commissioner of Labor to show, and for the court to find, a fraudulent scheme between the complainant and Hiller to avoid the tax to make the former liable therefor. It was so held in *Union Dry Goods Co. v. Cook,* 1944, 71 Ga. App. 708, 32 S. E. (2d) 190. In that case the Appellate Court of Georgia construed the state statute, which is very similar to ours, and found in favor of the taxing authority. The facts were quite similar to those shown in the instant case. The purpose of the statute is to prevent large business concerns, whether they are called "department stores" or by some other name, from dividing up the business into small units and thereby avoid paying a tax which is assessed for the benefit of employees.

 Considering the burdens that are being placed upon business of every kind by many and varied forms of taxation, and the authority conferred upon boards and agencies to assess and collect the tax, oftentimes arbitrarily and oppressively exercised, no opprobrium should attach to any local arrangements whereby such burdens may

be lessened or avoided. If there is a loophole, or weakness in the statute, the taxpayer will not be blamed for taking advantage of it, and what he does cannot be adjudged either immoral or illegal. No case has been cited, and we think none can be found, where the courts have sought by any process of construction to strengthen a weak provision of the law to aid the taxing authority to the prejudice of the taxpayer. We must look to the several provisions of the Unemployment Comepensation Law and, if the law is broad enough to justify the holding that the complainant is the ''Employing Unit'' as therein contemplated, then the assessment is valid.

In *Union Dry Goods Co.* v. *Cook, supra,* the court discussed at length the provisions of the lease contract between the company and J. L. Stevenson, lessee of the shoe department, and Miss Lexie Mason, lessee of the beauty shop department, and held that the drygoods company was the ''employing unit'' according to the terms of the Georgia statute. The statute is almost identical with ours, as found in 6901.19(e) to which we have made reference. When we come to consider the meaning of these words, it must be borne in mind that employment as defined in the Code has a much broader meaning than it has under the common law. They necessarily have reference to the relationship between persons generally, but in the instant case they have special reference to employment in industry and the tax that is levied to aid unemployment. In considering the rights of the parties under the statute, we do not think of ''employment'' in a strict sense as between master and servant, but of a relationship that exists by force of the statute. In *Union Dry Goods Co.* v. *Cook, supra,* it is said (71 Ga. App. at page 724, 32 S. E. (2d) at page 199) : '' 'It is immaterial whether the parties come within the relation of master

and servant or independent contractors. The act itself fixes the status of their employment which brings them within the terms of the act, and renders the employer liable for the contributions required by the act. As stated by the Supreme Court of Washington in *McDermott* v. *State*, 196 Wash. 261, 82 P. (2d) 568, 570, in construing an act similar to the Georgia act, "It is unnecessary to determine whether the common law relation of master and servant exists between respondent and the barbers and other operatives in his shop, because the parties are brought within the purview of the unemployment compensation act by a definition more inclusive than that of master and servant." *Young* v. *Bureau of Unemployment Compensation*, 63 Ga. App. [130] 137, 10 S. E. (2d) 412.' "

Now the complainant's business is not confined to leasing spaces or floors, in its business house, but it is operating a modern department store. Its profits are derived not from leasing but from the sale of merchandise. Moreover, the written agreement or lease, from which the chancellor quoted at length, is much broader than any ordinary lease contract. When the contract is considered as a whole, it is difficult to escape the conclusion that complainant is not the "employing unit."

With reference to the latter's control of the employees of Hiller, it appears that no one could work in this department without the complainant's consent; any or all employees could be discharged for cause at the request of complainant. There is one other important fact disclosed in the lease contract which is well nigh conclusive of the question that complainant is the "employing unit," to-wit, that Samuel G. Hiller and those working under him were to hold themselves out to the public as working for the complainant; that no one should be apprised of

the fact that Hiller had any interest whatever in the business that was being conducted by complainant as Levy's Ladies Toggery, Inc. See Section J, page 5, of the contract quoted above. If the complainant held itself out to these salesmen and other persons working in Hiller's department as the sole owner of the business, it would be estopped to deny liability for their salaries in the event they should demand payment by the complainant, and this is strengthened by the further fact that the lease contract requires that these alleged employees be paid by complainant for Hiller's account. We think it is extremely doubtful if there was à single person working under Hiller who thought of himself or herself as being employed by any one other than the complainant. While as between the parties to this lease the lessor (complainant) could doubtless compel the lessee (Hiller) to account for sufficient money to pay those working under him, and for him, as he claims, nevertheless, if he should fail to do so, they could compel payment by the complainant. In these circumstances the complainant, Levy's Ladies Toggery, Inc., must be adjudged the "employing unit" under our Unemployment Compensation Law.

It would unduly prolong this opinion to quote other provisions of the lease contract which strongly tend to show that the business is operated by complainant and that the latter must be regarded as the employing unit under the statute.

Counsel have cited *Stratis* v. *McLellan Stores Co.*, 311 Mass. 525, 42 N. E. (2d) 282, 142 A. L. R. 1393, as being "somewhat similar" to the facts of the instant case and urge the pronouncement of the court as most persuasive in favor of complainant's contention. In that case the court was not dealing with unemployment compensation, but was considering the right of the plaintiff to maintain

a common-law action for damages. The court was construing workmen's compensation acts to determine if his right of action was under the common law or the Workmen's Compensation Law of Massachusetts. Considering the many provisions of the agreement between complainant and Hiller, to which we have made repeated reference and which is very similar to the contract construed by the Massachusetts court, if Hiller is to be regarded as a subcontractor or independent contractor of the complainant, it follows that his employees, under the holding of this Court in *Adams* v. *Hercules Powder Co.,* 180 Tenn. 340, 175 S. W. (2d) 319, 151 A. L. R. 1352, and *Reynolds & Co.* v. *McKnight,* 177 Tenn. 228, 148 S. W. (2d) 357, could recover compensation for personal injuries and hence be precluded from maintaining a common-law action for damages against complainant. In other words, under our workmen's compensation statute, his employees are by force of law considered employees not only of their immediate employer but of the principal contractor as well. The construction which a court of a foreign jurisdiction gives to its workmen's compensation statute is of little or no value in determining the question of employment under our Unemployment Compensation Law. For this reason we think the holding of the Court in the *McLellan Stores Co. case, supra,* has no application here.

The complainant further insists that since the Treasury of the United States has canceled the federal assessment against it for the employees of Levy's Boys Shop, as shown by the letter which is made an exhibit to the amended and supplemental bill, that this Court should hold the state assessment invalid because "the administrative interpretation of the act, insofar as complainant is concerned, is that it is not liable for Hiller's em-

ployees." Sections 1600 et seq. of the Internal Revenue Code, as amended, 26 U. S. C. A. Int. Rev. Code, secs. 1600 et seq., applies only where an actual employer-employee relation exists. It thus differs from Tennessee Code, section 6901.19(e) and related sections, which is much broader and applies where there is the relationship of contractor and subcontractor.

We have considered this case as one of importance and think the chancellor reached the correct conclusion. The assignments of error are accordingly overruled and his decree is affirmed.