(No. 32490.)
GRAND LEADER DEPARTMENT STORE, INC., Appellant, *vs.*
THE DEPARTMENT OF LABOR, Appellee.

*Opinion filed May 20, 1953.*

JACOBSON, NIERMAN & SILBERT, of Chicago, (SIDNEY C. NIERMAN, DAVID SILBERT, and ARTHUR ALTSCHUL, of counsel,) for appellant.

IVAN A. ELLIOTT, Attorney General, of Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Appellant, who is Grand Leader Department Store, Inc., a corporation, filed a complaint in the circuit court of Cook County for review of administrative proceedings held in the Unemployment Compensation Division of the Illinois Department of Labor, wherein a decision was entered assessing appellant for contributions to the unemployment compensation fund for the years 1946, 1947 and 1948. The circuit court affirmed the decision and entered judgment against appellant for $7118.09, being the amount of the assessment for the three years plus interest and penalties. This appeal has followed.

The decision of the Department in the administrative proceedings was bottomed on a finding that appellant was an employing unit within the meaning of section 2(a) of the Unemployment Compensation Act, (Ill. Rev. Stat. 1947, chap. 48, par. 218(d),) and thus an employer liable for contributions, and that the services of the disputed employees was employment rendered for appellant within the meaning of section 2(f)(1). (Ill. Rev. Stat. 1947, chap. 48, par. 218(f)(1).) The Department reasserts those claims in this appeal and, in addition, contends that the services rendered by the employees to appellant were not such services as are exempted by section 2(f)(5). Ill. Rev. Stat. 1945, chap. 48, par. 218(f)(5).

The decisive issue is whether appellant is the employing unit of the employees of various concessionaires who lease space in the appellant store. There is little dispute as to the material facts, but contest arises on the interpretation to be given them. In 1938, appellant leased from others a store building in the city of Chicago, consisting of a basement and two upper floors, for a term of twenty years at a fixed monthly rental. This lease provided that appellant could sublet any or all of the space in the building to one or more persons, as it saw fit, for the purpose of selling merchandise. The appellant corporation did not thereafter

engage in the business of selling merchandise itself but entered into leases with divers parties wherein floor space was assigned to each lessee for the sale of clothing, cosmetics, liquor, groceries and the like. Throughout the record these lessees are referred to as concessionaires and hereafter we shall also use that designation.

The leases entered into by appellant and the concessionaires provided that the rental to be paid appellant was, in every instance, a certain per cent of the concessionaire's *gross sales*. In addition it was provided that appellant would be paid three per cent of such sales to be used for advertising expense. Further provisions were that appellant would furnish all heat, water, janitor and window-trimming services; that the concessionaires would observe orders and directions of a store manager, to be named and employed by appellant, who would allot window and advertising space to each concession, fix the store hours and examine the cash registers on each day to ascertain the amount of sales; that the parties agreed and understood that their relationship at all times should be that of landlord and tenant; and that appellant retained the right to terminate its relation with the concessionaire upon sixty days' notice.

Other evidence discloses that each concessionaire paid his own employees without contribution from appellant and deducted social security and income tax from their wages. Each concessionaire hired and discharged his own employees, the only measure of control in appellant in such function being a provision in the lease that appellant could insist upon the discharge of a dishonest employee. Each concessionaire paid his own fire, workmen's compensation and public liability insurance and, where required, the individual concessionaire applied and paid for his own city, State or Federal license. The same was true of the occupational tax on sales made by the separate concessions. The income tax returns of appellant were separate and apart and appellant paid tax only on its income from the rentals.

In this respect, the concessionaires did not share in the corporation's profits or losses, nor it in theirs. It is shown, too, that appellant paid wages and the taxes incident thereto, only to its manager, janitor and one office clerk.

Further evidence appearing in the record is that the name "Grand Leader Department Store" appears on a sign in front of the building; that the same name is the only one used in store advertising; that some of the concessions used sales slips with the store name printed on them; that the slips could be presented to a clerk hired by appellant for the purpose of getting trading stamps redeemable at any concession in the store; and that the telephone number for the store was listed in appellant's name.

No single concessionaire had the requisite six employees to make him liable for contributions under the act and the number of employees to whom appellant paid wages was also less than six. Combined, however, the total number of persons employed in the store for wages amounted to more than six and it is upon this combined total that the assessment against appellant was based. It is the Department's contention that appellant and the concessionaires were jointly engaged in the operation of a department store and that persons hired by the concessionaires to work in their concessions were performing services for both appellant and the concessionaires, thus making appellant an employing unit under the terms of the act. In support of that position, the Department points to the facts and asserts that appellant's business was not that of leasing space to a number of independent and unrelated concessionaires but, through the means of fifteen integrated concessions, was that of operating a general department store under its name, management and control. Appellant, on the other hand, argues that the use of its name on the store and some sales slips, the functions of its manager, its control of advertising and window dressing, its handling of adjustments and complaints, fixing of store hours, etc., do

not establish a joint operation making appellant liable under the act as the employer of the concessionaires' employees.

We have not, to our knowledge, ever been called upon to determine who is the employer under the same or a similar factual situation. Somewhat comparable business arrangements have been considered in other jurisdictions under their unemployments acts and it was held that appellant's counterparts in those cases were employers liable for unemployment contributions. The Department offers those decisions as a guide in this case, and chief among them are *Levy's Ladies Toggery, Inc.* v. *Bryant,* 183 Tenn. 372, 192 S.W. 2d 833; *Goldsmith & Sons* v. *Hake,* 187 Tenn. 91, 213 S.W. 2d 15, and *Union Dry Goods Co.* v. *Cook,* 71 Ga. App. 708, 32 S.E. 2d 190. Our examination of the cited cases leads us to conclude that there are substantial differences both in the facts and statutes involved, which cause them to be of doubtful application. In the *Levy case,* the court found the contract between the parties to be a convenient agreement for the operation of a department store since the licensor received all of the cash for sales made, kept books, and accounted to the licensee for his percentage at stated periods after paying, for the licensee's account, all salaries, advertising and insurance. The *Goldsmith case* presented a situation where the agreement provided that the store management should handle all funds, keep the books, records and accounts and make settlement at stated times, retaining for the company the percentage agreed upon. The *Union Dry Goods case* is not substantially different, for there again the lessee agreed to deliver all cash from sales to the lessor's cashier as soon as the sales were made, to be retained until the tenth day of the month when it was turned over to the lessee after deducting the agreed rental and monies advanced by the lessor for advertising, wages, delivery, transportation and other expense. In all three cases, we find that the employees of the management performed services for each of the depart-

ments by keeping their account books and handling credit matters.

The controls exercised by appellant in the present case do not extend to the extremes of those in the cases relied upon. Appellant did not at any time handle the cash, accounting or credit matters of the concessionaires nor did it agree to such an arrangement. Those matters remained solely in the hands of the concessionaires. Appellant did not pay the employees out of its rentals from the sale of merchandise and, in fact, did not pay them at all. No employee could claim, as was mentioned by the court in one of the cited cases, that the store management owed him wages at any time. Another factor to be considered is that in the present case, the appellant took its rentals from a percentage of the gross receipts, leaving the concessionaire to pay all expenses, wages, taxes, licenses and insurance incidental to the operation of the concession. Such an arrangement is entirely incompatible with the concept of joint operation, and its importance is borne out by the fact that it was this feature of the business arrangements considered in the cited cases which was determinative of the court's conclusions that the parties were engaged in the joint operation of the stores involved.

Insofar as the Tennessee cases are concerned, another distinguishing factor is that the assessment against the department stores was made by virtue of a provision in its statute whereby employers under the act are also deemed to be employers of the employees of any persons with whom they make contracts to assist them in their business, unless the other party to the contract is also an employer under the act. (Williams Code, Sec. 6901.19(e).) Illinois has not had a comparable provision since 1945.

While factually different, this court's decision in *Mowry* v. *Board of Review*, 411 Ill. 508, is helpful in a determination of what controls may be said to impart a relationship of employer-employee. The case was an action by

unemployed musicians for unemployment compensation and we held that, under the act, their employer was their band leader rather than the hotel with which the band leader had a contract. In that case the hotel had an entertainment manager who exercised a degree of control over the leader in integrating the orchestral music in preparation of floor shows and, further, the hotel, by terms of the contract, deducted social security and income taxes for each musician and reported the earnings of each to the division of unemployment compensation. It was pointed out, however, that these functions of the hotel were overshadowed by the fact that the band leader selected, trained and discharged his own musicians, fixed and paid their salaries, and shared his profits and losses independent of the hotel. As a result we held that the band leader was the employer responsible for unemployment contributions.

The circumstances relating to the employees of the concessionaires are not substantially different. The concessionaire hires his own employees, trains them, fixes their pay and administers all tax matters incident to it. The appellant performs none of these functions, gives no other services and has no liability to such employees. The *Mowry case,* as others before it, states that the Unemployment Compensation Act deals with economic realities. It could only be by a torturing of the plain facts and by an indulgence in technicalities not manifested in our statute that we could hold appellant is the employer of these employees in any sense.

Nor do we think that such a conclusion is altered by the circumstances of the relationship between appellant and the concessionaires. There is no suggestion that the business arrangement of appellant and the concessionaires is designed as a means of evasion or subterfuge, and we believe, as the court did in *Gabel Manufacturing Co.* v. *Murphy,* 390 Ill. 455, that the language of the leases,

which fixes the relationships between them, must be given the meaning which the words used imply. The leases, in each instance, provide that the individual concessionaire is to conduct his own business, at his own expense and risk and that nothing in the lease is to imply a partnership between the appellant and the lessee. This intent of the parties is further given effect by the terms of the lease which provide that rentals are to be based upon a percentage of the gross sales of a concessionaire and that the latter have no authority to obligate appellant in any manner. While the provisions which give appellant authority to the degree that he may control advertising, fix store hours and insist upon discharge of dishonest employees, go beyond the normal relationship of landlord and tenant, we are not prepared to say, in the absence of elements essential to a joint enterprise, that such authority constitutes appellant a joint operator with the concessionaires. Giving the terms of the lease their plain meaning, it must be concluded that appellant is in the business of leasing space and not that of operating a department store jointly with its lessees.

For these reasons, our view is that appellant is not an employing unit under the terms of the act and is, therefore, not liable for the assessments based on the employees of the concessionaires. This result renders it unnecessary to consider the Department's contention that the services rendered by the employees did not fall within the exemption of section 2(f)(5), or the contention of appellant that the Department acted unreasonably and arbitrarily when it assessed appellant for all the contributions and assessed none against the concessionaires.

The judgment of the circuit court of Cook county is reversed.                                  *Judgment reversed.*